**BARTELME et al. v. MERCED IRR. DIST.**

Circuit Court of Appeals, Ninth Circuit.
February 18, 1929.

Rehearing Denied April 4, 1929.

No. 5547.

Grove J. Fink, Bartley C. Crum, and Mc-Gee & Mather, all of San Francisco, Cal., for appellants.

F. W. Henderson, of Merced, Cal., and Downey & Seymour, of Sacramento, Cal., for appellee.

Before GILBERT and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

GILBERT, Circuit Judge. The appellee is a public corporation, organized under the Irrigation District Law of California (St. 1897, p. 254, as amended and supplemented). It was engaged in an extensive irrigation project. For reservoir purposes it deemed it necessary to acquire title to the Horseshoe Bend ranch, the property of the appellants. The price demanded by the appellants was $150,000. The price offered by the appellee was $80,000. An understanding was reached, and on October 19, 1923, the appellee submitted to the appellants a letter as expressing the terms thereof. On the same day the appellant Ehman, as attorney in fact for his coappellant, indorsed on the letter the following acceptance: "The foregoing is in accord with my understanding of arrangement this day entered into and I hereby accept the terms and conditions thereof." The proposition thus accepted contained among other provisions the following: "Said district will purchase and you will sell said Horseshoe Bend Ranch for a total price of $87,500.00, payable in the manner hereinafter specified." One of the provisions was that the appellants should deposit in escrow with a named bank certain promissory notes and a deed in a specified form, to be delivered to the appellee upon the final payment of the purchase price.

On August 5, 1925, the appellants filed in the court below their suit for reformation of the contract and for specific performance thereof. The relief sought was not based on mistake of either party to the contract, but on the ground that by reason of fraud practiced by the appellee there was intentionally omitted from the agreement a provision setting forth an essential part of the consideration agreed upon by the parties, which was that, in addition to the $87,500 expressed in the agreement, the appellants were to receive the commissions on all insurance and surety bonds which should be issued in connection with the construction of the entire irrigation project. The complaint alleged that, before the contract was executed, all of its provisions were fully understood by both parties thereto, and that prior to its execution, and prior to its delivery to the escrow holder, the appellant Ehman urged upon the directors and the attorney of the appellee the necessity of inserting in the written agreement the provision in regard to the insurance.

The appellants insist that the provision as to the insurance was finally omitted by mutual consent of the parties, but with the expressed understanding and agreement and promise on the part of the directors of the appellee that they would see to it that Ehman should get the insurance, and that this promise, which, it is asserted, was made without any intention on the part of the appellee to perform the same, constitutes the fraud which is alleged as the ground for the reformation of the instrument, and the bill alleges that the agreement that all of the surety bonds and other insurance to be written in connection with the construction of the district project would be placed with or through the appellant Ehman and his nominee or nominees, was entered into by the appellee and said officers without any intention on their part "of abiding by or performing said contract." Section 1572 of the Civil Code of California, subdivision 4, provides that one species of actual fraud is "a promise made without any intention of performing it." That section was construed in Lawrence v. Gayetty, 78 Cal. 126, 131, 20 P. 382, 384 (12 Am. St. Rep. 29), where it was said: "The mere failure to perform the covenant does not relate back to and render the same fraudulent. It is the present intent not to perform it that renders it wrongful." And it has been held that the fraudulent intent contemplated by the statute must exist at the time of making the promise. Locomobile Co. of America v. Belasco, 32 Cal. App. 329, 332, 162 P. 920. In brief, the question presented by the pleadings and proof was whether or not the directors and attorney of the appellee, at or before the execution of the contract, conspired to defraud the appellants and obtain from them the title to their real estate, by promising them a substantial consideration in addition to the money consideration named in the agreement, which promise they had no intention of performing. It was shown in evidence that, after the agreement had been executed, Ehman and the directors and the attorney of the appellee went to the home of Cunningham, the banker who was to be the depositary of the escrow, for the purpose of delivering the papers to him. Ehman testified that he referred to the fact that there was

nothing in the papers relative to the insurance feature of the agreement, and asked Mr. Cunningham to put the question to each member of the board of directors of the appellee, and ask each one if he understood that the deal included, besides the amount of money set forth in the letter of October 19, 1923, all the insurance that would arise out of the district development, and that Mr. Cunningham called upon each member of the board by name, and asked him if it was so understood, and that individually and collectively they answered, "Yes," and that the appellee's attorney, Cowell, was present and the appellee's right of way agent, Sargent, and that there was a full representation of the board. The directors, however, testified to the contrary. Bloss testified that he was not present, and no such question was ever asked him. Kocher testified that all the directors were present except Bloss, and that no question was asked of him, or of any other member of the board, about insurance; that Mr. Cunningham was not requested by Mr. Ehman at that time, or at any other time, to ask such a question; and that no member of the board answered that the insurance was to be part of the consideration for the ranch, and that nothing was said about insurance. Burchell, Givens, and Garvin, the three remaining members of the board, testified to the same effect, as also did Sargent and Cunningham. Cowell testified that he did not recall hearing anything said about insurance.

Here was a distinct and vital issue on a question of fact. The court below made no finding on that issue, but did find that the subject of insurance had been discussed between the contracting parties for a considerable period prior to the execution of the contract and expressed the opinion that the appellants accepted the cash consideration of $87,500 with the thought that from $40,000 to $50,000 additional would come to them by way of insurance commissions, that the officers of the appellee encouraged them in that belief, and that the appellants had good grounds for the belief. But the court reached the conclusion that, while the whole agreement between the parties might amount, under the evidence, to a "gentlemen's secret side agreement," a corporation of the nature of the appellee could not lawfully transact business of that type in such a manner; and, referring to the unsigned letter of date September 20, 1923, written by Cowell, addressed to Ehman, and in form to be signed by the appellee, the court said: "The fact that the district officers refused to sign the said letter should have been ample warning to the plaintiffs, and put them on their guard. Had the letter been signed as expressive of the additional 'secret side agreement' I have serious doubts that it would have been enforceable. The agreement or contract, had the letter been signed, would have been impossible of interpretation, impossible of performance, impossible of enforcement, and probably would have been ultra vires so far as the defendant is concerned."

The letter, so drafted, was as follows: "Dear Sir: This will confirm our conversation of to-day, in which it is agreed that we will see to it that all of the surety bonds and other insurance to be written in connection with the construction of Merced Irrigation District will be placed with the Southern Surety Company, in which company we understand you are interested, in consideration of your liberal dealing with us in the sale of the Horseshoe Bend ranch. It is understood and agreed, however, that if any other company or companies, other than the Southern Surety Company, should quote a lower rate of premium on any of the said bonds or insurance, or should in any other way offer to write said bonds or insurance upon a basis more favorable to the said irrigation district, or the contractors to whom contracts may be awarded by said irrigation district, than that offered by said Southern Surety Company, and the said Southern Surety Company does not elect to meet such rates or conditions, then the said district shall be relieved from any obligation to see that said bonds and insurance are placed with the said Southern Surety Company."

There is absence of evidence in the record to sustain the charge that the directors of the appellee made an agreement with the appellants which they had no intention to perform. If all doubts as to the truth of the testimony are resolved in favor of the appellants, the most that they can claim is that certain officials of the appellee assured them that, in addition to the cash purchase price paid for their land, they should receive all the insurance business in connection with the construction of the works of the district which they, the said officers, could control. There is nothing to show that there was no intention to perform that promise, further than the fact that the appellants failed to receive any of the insurance. But Cowell testified as to his efforts to locate the insurance with the appellants, and mentioned the names of three persons to whom he made the request.

If there was in this case an understanding that a part of the consideration for the land was to be the insurance commissions,

which the appellants might receive from insurance business promised to be turned in their direction by the directors and officers of the appellee, it is clear from the evidence that all mention thereof was omitted from the written contract, with the knowledge and consent of the parties thereto. Power to reform instruments for fraud or mistake is universally conceded to courts of equity, but a court of equity has no power to reform a contract, so as to insert in it a provision which the contracting parties never intended it to contain. It can go no farther than to make the contract express the true intention of the parties as to its provisions. In other words, it can make the contract only what the parties intended it to be. "Neither will the court insert a provision which was omitted with the consent of the party asking the reformation, although such consent was given in reliance on an oral promise of the other party that the omission should not make any difference." 23 R. C. L. 311; Williams v. Hamilton, 65 Am. St. Rep. 475, 506, note; Comerford v. United States F. & G. Co., 59 Mont. 243, 260, 196 P. 984. "If a clause which the petitioner claims should have been inserted in the contract is not one which the parties agreed on and omitted through mistake, but merely one which ought as a matter of propriety to be inserted, a court of chancery will not interfere; it not being within its province to make or ameliorate contracts for parties." Thompsonville Scale Mfg. Co. v. Osgood, 26 Conn. 16.

The decree is affirmed.