**EMERSON RADIO & PHONOGRAPH CORPORATION, Plaintiff,**

v.

**E. G. HENDRIX, doing business as E. G. Hendrix Company, Defendant.**

United States District Court
S. D. New York.
July 11, 1957.

---

David B. Williams, New York City, for plaintiff, Simon H. Rifkind, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel.

Donovan Leisure Newton & Irvine, New York City, for defendant, Sidney P. Howell, Jr., T. David Mullen, New York City, of counsel.

LEVET, District Judge.

This is a motion by the plaintiff for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. directing summary judgment against the defendant in the sum of $44,532.83, with interest on the sum of $35,617.75 from the 6th day of December, 1956, and with interest on the sum of $8,915.08 from the 19th day of April, 1957.

The action was commenced in the Supreme Court, New York County, on April 16, 1957, and was removed by the defendant to this court. Plaintiff seeks to recover for certain radios, television products and parts sold and delivered by it to the defendant. The agreed price was $323,615.90, of which the defendant paid or received credit to the extent of $279,083.07, leaving a balance due of $44,532.83. The defendant's answer originally consisted of a general denial. However, after plaintiff moved for summary judgment, the defendant on May 21, 1957, served an amended answer containing a counterclaim alleging that the plaintiff agreed to cancel a certain order and that thereafter the defendant placed a new order with the plaintiff and that the plaintiff delivered merchandise on both orders, thereby overloading the defendant's inventory. The counterclaim also alleges that the plaintiff failed to credit the defendant's account to the extent of $50,000 by reason of defective merchandise allegedly returned by the defendant's dealers, obsolete merchandise and numerous other alleged credit items.

Pursuant to a written agreement dated July 30, 1956, the defendant became the plaintiff's distributor in certain counties in Texas for the period commencing on July 1, 1956, and terminating on June 30, 1957. The agreement was terminable by either party giving to the other 30 days' written notice. Paragraph 12 of the agreement provided in part as follows:

"* * * If, during the term of this agreement, Distributor shall have reason to believe it has any claim against Emerson in respect of any transaction growing out of this agreement, it shall in writing notify Emerson thereof within 30 days after Distributor knows or has reason to know the basis of any such claim. Failure to give such notice shall relieve Emerson from any and all liability on any such claim."

The agreement further provided that, upon termination, the plaintiff had the right to purchase from the defendant "such Emerson products or materials in Distributor's stock as Emerson shall elect to purchase."

On October 11, 1956, the defendant, acting under the distributorship agreement, gave the plaintiff an order for television sets and radios. The defendant contends that the order was given with the express understanding that it would be filled in shipments of 30% in October, 1956, 40% in November, 1956, and 30% in December, 1956.

The first shipment under the October 11th order was made by the plaintiff

on October 25, 1956; the second on November 2, 1956, and the third on November 9, 1956. The first shipment was received by the defendant on November 13, 1956.

On November 16, 1956, subsequent to the defendant's receipt of the first shipment and prior to its receipt of the second and third shipments, the defendant gave the plaintiff a second order for television sets and radios and which contained the following statement: "Cancel all back orders for TV & Radios except on models 860 and 861, we still want these models." In his affidavit in opposition to the motion for summary judgment, the defendant's general manager states that he was informed by the plaintiff's agent in Texas that the merchandise covered by the October order which had not been filled had been cancelled and that the defendant gave the order of November 16th to the plaintiff in the belief that the balance of the October 11th order had been cancelled. On November 28, 1956, the plaintiff shipped to the defendant part of the merchandise covered by the November 16th order.

The defendant received the second shipment under the October 11th order on November 29, 1956. The third and last shipment under the October 11th order was received by the defendant on December 5, 1956.

On December 6, 1956, at which time the defendant had received all three shipments under the October 11th order and was aware of the shipment under the November 16th order, he signed three trade acceptances totaling $105,795.30 plus interest of $1,051.95, due respectively January 25, 1957, February 25, 1957 and March 25, 1957, in payment of invoices covering the four shipments. The first two trade acceptances were paid when they came due. The only one dishonored was the trade acceptance due March 25, 1957 in the sum of $35,617.75.

On March 22, 1957, three days before the last trade acceptance matured, the defendant wrote the following letter to the plaintiff:

"Emerson Radio & Phonograph Corp.
"14th & Cole Sts.
"Jersey City 2, New Jersey

"Attention: Mr. Stanley L. Abrams, President

"Dear Mr. Abrams:

"A decision has been made by the head of our company that we will discontinue the sales of television and radio sets. We earnestly feel that Emerson will have no trouble in establishing a new distributor for this territory. We ask your assistance in relieving us of our present inventory of Emerson receiver sets, radio sets, and parts.

"For your information, our present plans are to devote our efforts in the wholesale furniture business.

"Waiting your early reply and with kindest personal regards, I am

"Very truly yours,
"E. G. Hendrix Company
"(Sgd) H. Koplan
"H. Koplan
"General Manager
"HK:jlk"

The plaintiff refused to elect to take back any of the defendant's inventory in accordance with its repurchase rights under paragraph 14 of the distributorship agreement of July 30, 1956.

The defendant never gave the plaintiff written notice within the thirty days after the receipt of the last shipment under the October 11th order that any merchandise shipped under said order was delivered too late, overloaded defendant's inventory, was defective or obsolete, as required by paragraph 12 of the distributorship agreement.

# 575

The defendant defaulted on the March 25th trade acceptance in the sum of $35,617.75 and also declined to pay a balance allegedly due to plaintiff on an open account in the sum of $8,915.08. Accordingly, this action was commenced.

The papers on this motion contain a letter on the defendant's stationery and addressed to the defendant which was apparently signed by the plaintiff's agent, Stanton Ruby, and reads as follows:

"Mr. H. Koplan
"c/o E. G. Hendrix Company
"321 South Flores Street
"San Antonio, Texas

"Dear Mr. Koplan:

"I wish to inform you that the factory has instructed that on the transfer of all cabinets and parts that we ship, review the inventory of same in six months and permit return of obsolete parts, cabinets, etc.
"(Sgd) Stanton Ruby"

On April 19, 1957, nearly two weeks after the commencement of this action, the defendant wrote to the plaintiff, attaching a copy of Ruby's letter and a list of parts which the defendant considered as obsolete and requested permission to return the parts for full credit in the sum of $1,074.72. In addition, the defendant requested permission to return approximately $12,000 in parts and picture tubes because he was overstocked. The plaintiff did not accede to the defendant's requests.

When the defendant signed the trade acceptance in question on December 6, 1956, with full knowledge of his receipt of the merchandise covered by said trade acceptance, he thereby acknowledged that he was indebted to the plaintiff in the sum of $35,617.75, which was payable on March 25, 1957. Moreover, there is no evidence that the defendant ever gave written notice of any claim to the plaintiff within thirty days after his receipt of the merchandise.

With respect to the plaintiff's claim for the balance due on an open book account, plaintiff's records reveal that this amount totals $9,045.47, for which the defendant is entitled to a credit of $134.-35, leaving a balance of $8,911.12. The discrepancy between the latter figure and plaintiff's claim of $8,915.08 is due to the entry of a charge in the sum of $35,621.71 for the trade acceptance due March 25, 1957, whereas the figure should have been $35,617.75. The affidavits in opposition to the motion for summary judgment do not deny that merchandise was received by the defendant in accordance with the entries in the plaintiff's records or that any of the figures appearing therein are incorrect.

█ Upon the foregoing facts, it is my conclusion that there is no genuine triable issue as to any of the material facts with respect to the plaintiff's claim. Moreover, with the exception of the list of parts which the defendant claimed were obsolete and for which he sought credit in the sum of $1,074.72, there is no merit to the defendant's counterclaim. The defendant's claims with respect to defective merchandise, obsolete parts, unauthorized shipments by plaintiff, and credit items, were never submitted in writing to the plaintiff as prescribed by paragraph 12 of the distributorship agreement. These claims were asserted in writing for the first time in the amended answer after the plaintiff had moved for summary judgment.

The letter signed by Stanton Ruby and dated August 1, 1956, raises some question as to the plaintiff's obligation to accept the return of obsolete merchandise. Consequently, there exists a genuine issue of fact as to the defendant's credit claim in the sum of $1,074.72 which must be reserved for trial.

█ The authority of a federal court to enter summary judgment on a complaint and to reserve for trial a counterclaim raising factual issues is graphical-

ly stated in 6 Moore's Federal Practice, pp. 2201–2202, as follows:

"\* \* \* Under amended Rule 54(b), where an action involves multiple claims, as it would where there was a claim and a counter-claim (either compulsory or permissive), the court may now direct the entry of a final judgment upon one or more but less than all of the claims, provided it makes an express determination that there is no just reason for delay and makes an express direction for the entry of judgment. In that event Rule 62(h) authorizes the court to stay enforcement of that judgment until the entering of a subsequent judgment or judgments. Thus the court may now enter a final summary judgment upon an established claim although a counterclaim remains pending for trial, or vice versa. And it can give the losing party adequate protection under Rule 62 (h). If the trial court does not make an 'express determination' and an 'express direction' then any adjudication it makes, prior to an adjudication of all the claims, is interlocutory. But since Rule 56(d) contemplates interlocutory summary adjudications, there is no sound legal reason why the court may not make an interlocutory summary adjudication of a claim or a counterclaim, which does not involve a triable issue, although the remaining claim or counterclaim must be tried. And practical administration dictates that it should settle what issues are not disputed, and thus shape up the case for trial of those that are."

Accordingly, the plaintiff is entitled to summary judgment against the defendant in the sum of $44,528.87 with interest on the sum of $35,617.75 from the 25th day of March, 1957. The plaintiff will be stayed from the enforcement of $1,074.72 of the judgment pending the ultimate determination of this claim and may enforce the balance.

Settle order on notice containing a provision in accordance with Rule 54 (b) of the Federal Rules of Civil Procedure that there is no just reason for delay and containing an express direction for the entry of judgment.