Fred F. SCHROETER and Hasco Plywood Corp., a Corporation, Plaintiffs,

v.

RALPH WILSON PLASTICS, INC., a Corporation, Ralph Wilson Plastics Co., a Division of Dart Industries Inc., and Dart Industries Inc. and Robert C. Prall, Defendants.

No. 69 Civ. 122.

United States District Court, S. D. New York.

Nov. 13, 1969.

Berg & Harrison, Great Neck, N. Y., for plaintiffs; Harold Wm. Harrison, Great Neck, N. Y., of counsel. ·

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants; Leonard Joseph, Marc J. Luxemburg, Neal Johnston, New York City, of·counsel.

PALMIERI, District Judge.

Two motions are presently before the Court in this case. The first, made by all defendants jointly, seeks to dismiss the complaint of plaintiff Schroeter suing in his individual capacity. The second motion, by defendant Dart Industries, Inc. [Dart], seeks summary judgment against plaintiffs Schroeter individually and Hasco Plywood Corporation [Hasco] in the amount of $23,-575.25 each on Dart's counterclaims number two and four. For the reasons set out below, the first motion is denied and the second motion is granted.

### Nature of the Litigation

In this suit plaintiffs seek an aggregate of nine million dollars in damages for alleged discriminatory pricing practices by defendants in violation of the antitrust laws. Plaintiff Schroeter is the sole stockholder and president of Hasco; he sues on behalf of Hasco and also on his own behalf, alleging that the defendants' conduct injured the corporation and directly injured him individually as well.

From September 14, 1964 to May 31, 1968, Hasco was a distributor in the New York metropolitan area of "Wilson Art" laminated plastic products. These were produced by Ralph Wilson Plastics, Inc. [Wilson] until January 25, 1966, when Dart acquired Wilson; thereafter, production was continued through Dart's Ralph Wilson Plastics Co. Division [Wilson Division]. Hasco's distributorship arrangement was not affected by the corporate reorganization. .

During the life of the distributorship, Hasco was unable to operate at a profit and encountered serious financial difficulties. In order to enable Hasco to continue in business, new arrangements were made between Hasco and Wilson Division in an agreement dated July 22, 1966. Among other provisions in this agreement, Wilson Division undertook to lend Hasco $23,575.25 in cash, in order that Hasco might pay off an indebtedness to Schroeter Lumber Corp., another corporation owned and operated by plaintiff Schroeter; this loan was to be due and payable in its entirety within three years from the date of the loan. Schroeter as an individual guaranteed repayment of this loan in a formal Guaranty executed July 22, 1966. Hasco received the money on July 27, 1966; the loan became fully payable no later than July 27, 1969. No part of this loan has ever been repaid. The past-due loan is the subject of· Dart's second counterclaim against Hasco as the payee and of Dart's fourth counterclaim against Schroeter individually as the guarantor.

### The Motion to Dismiss as to the Plaintiff Schroeter is Denied Without Prejudice

Schroeter seeks damages as an individual, over and above those suffered

by Hasco, on the following grounds: (a) Hasco's inability to pay agreed and earned wages, salaries, commissions and expenses; (b) Hasco's inability to compensate Schroeter for damages to real property occupied by Hasco and for personal property used by Hasco; (c) direct damage for contracts defaulted upon by Hasco which Schroeter was compelled to perform; and (d) "all other incidental damage suffered by Schroeter as an individual." He suggests that under the recent decision of the Supreme Court in Perkins v. Standard Oil, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), he is entitled to seek recovery in his individual capacity for damages to him flowing from activities directed against the corporation. Dart, on the other hand, contends that Perkins lends support to its motion to dismiss.

In the Perkins case, plaintiff sued in his individual capacity and as sole stockholder in, and assignee of all claims of, two corporations he owned, Perkins of Washington and Perkins of Oregon. Perkins had organized the two corporations in 1952 to handle all of his wholesale gas and oil operations and most of his retail service stations; he however, retained direct control and ownership of some retail outlets, and stood in the position of owner-lessor to his corporations with respect to his bulk gasoline plants and most of his service stations. In 1947 Perkins had executed an individual supply contract with Standard Oil for the needs of his business; after 1952, although Standard was informed that Perkins had reorganized his businesses, it continued to supply all of the ordered gasoline products to, and to bill, Perkins as an individual until he sold all his holdings in 1957.

Perkins alleged that between 1955 and 1957 Standard had discriminated in price, in violation of the antitrust laws, against him in selling the same products at lower prices to its own branded dealers and to another independent whole-saler with whose retail service stations Perkins' outlets ultimately competed. The trial jury awarded damages for the competitive disadvantage suffered, through Standard's practices, at the hands of both the branded dealers and also the independent wholesaler's outlets.

The Court of Appeals, however, disagreed with the district court, holding that part of the injury forming the basis of the damages was too remote from the antitrust violation to be recoverable in a suit under the Clayton Act and the Robinson-Patman Act. Turning to Perkins' claims for recovery as an individual, the court in substance reiterated the general rule that such recovery was not proper in antitrust for ordinary stockholders, creditors, or deposed officers of an injured corporation. However, the court suggested that a nonoperating owner-lessor, whose reversionary interest was injured by the antitrust violations, would have a basis for claiming individual damages.

On appeal the Supreme Court reinstated the jury verdict. The Court held that the damage in question from unfair competition was not too remote to be recoverable in the action. The Court then stated:

One other minor group of damages was found to be improper by the Court of Appeals and we conclude that this ruling was also erroneous. Perkins submitted some evidence tending to show that he as an individual had suffered financial losses because the two failing Perkins corporations * * * were unable to pay him agreed brokerage fees for securing gasoline, rental on leases of service stations, and other indebtedness. The Court of Appeals, in order to give guidance to the trial judge at the proposed new trial, noted that, in its opinion, these damages were not proximately caused by Standard's violations and that Perkins

should not recover for these damages in a second trial. \* \* \* It is clear in this case, however, that Perkins was no mere innocent bystander; he was the principal victim of the price discrimination practiced by Standard. Since he was directly injured and was clearly entitled to bring this suit, he was entitled to present evidence of all of his losses to the jury. 395 U.S. at 649–650, 89 S.Ct. at 1875.

█ It has not yet been demonstrated that Schroeter was the "victim" of the alleged antitrust violations. Whether he will be able to show that he as an individual suffered direct damages from the actions of defendants against Hasco, apart from those suffered by Hasco as a separate corporate entity, remains to be seen. Accordingly, defendants' motion to dismiss the complaint, in so far as it relates to damages suffered by Schroeter in an individual capacity, must be denied at this time. However, this denial is without prejudice to a renewal of the motion at an appropriate stage of the case.

### Dart's Motion for Summary Judgment Against Hasco and Schroeter is Granted

Plaintiffs admit that the loan in question was made to Hasco by Wilson Division, that Schroeter guaranteed repayment, that it was to be repaid within three years from July 27, 1966, and that to date there has been no repayment of any kind. Additionally, plaintiffs raise no defense to the alleged nonpayment. There is thus no genuine question of material fact outstanding, either in relation to plaintiffs' liability or to the amount due defendant Dart. The subject matter of these counterclaims is wholly distinct and separable from both the transactions and the legal theories underlying the complaint.

█ Rule 56, Fed.R.Civ.P., permits the entry of a summary judgment on a counterclaim and directs that the judgment shall be entered forthwith if there is no genuine issue as to any material fact. This judgment is interlocutory in nature, and does not become final unless this Court expressly determines under Rule 54(b) that there is no just cause for delay in execution. See, 6 Moore's Federal Practice, ¶ 56.17[15], pp. 2524–26. Defendant does not seek a determination of finality in the present motion.

█ The existence of other unadjudicated claims in the suit, both in the plaintiffs' complaint and in the defendant's counterclaims, does not affect the propriety of summary judgment in this case. Once the independent nature of the claim is established, considerations of possible setoff through recovery on other claims by the party against whom summary judgment is taken become relevant only to the question of whether the summary judgment as rendered should be made final under Rule 54(b) prior to resolution of any remaining issues in the case. It is clear that under the federal rules summary judgment may be awarded an aggrieved party on a claim involving no genuine controversy, notwithstanding the existence of other claims necessitating trial in excess of the amount of the claim for which summary judgment is granted. See, Omark Industries, Inc. v. Lubanko Tool Co., 266 F.2d 540 (2d Cir. 1959); Reines Distributors, Inc. v. Admiral Corp., 31 F.R.D. 187 (S.D.N.Y.1962); Emerson Radio & Phonograph Corp. v. Hendrix, 20 F.R.D. 572 (S.D.N.Y.1957); Metro Corrugated Containers Inc. v. Owens-Illinois Glass Co., 185 F.Supp. 359 (E.D.N.Y.1960); 6 Moore's Federal Practice, ¶ 56.17 [15], at 2524.

In opposing the motion for summary judgment, plaintiffs have cited New York cases for the proposition that summary judgment will not lie where the open claims exceed the amount of the proposed summary judgment. This proposition reflects the view of the New York courts. But the federal rule is to the contrary. See authorities cited *supra*.

In short, Dart's counterclaim on the loan to Hasco and the additional counterclaim on the guarantee of that loan by Schroeter are not disputed. Rule 56(c), Fed.R.Civ.P., sanctions the entry of a summary judgment of an interlocutory character for less than the full amount of damages sought by Dart within the framework of this case.

Accordingly, Dart's motion for summary judgment on its second and fourth counterclaims is granted. The question of the finality of the summary judgment herein granted must abide any application that may be made by Dart for an order of finality under Rule 54(b).

### Conclusion

The motion to dismiss plaintiff Schroeter's individual claims is denied without prejudice. The motion for summary judgment by Dart against Hasco and Schroeter for $23,575.25 on each counterclaim is granted. Submit order consonant with this opinion.

It is so ordered.