[Civ. No. 38834. Second Dist., Div. Two. June 15, 1972.]

KENNETH A. LaFORTUNE, Plaintiff and Respondent, v. LILLIAN EBIE, Defendant and Appellant.

## COUNSEL

John Guerin for Defendant and Appellant.

Sommers & Lakritz, Alfred J. Lakritz, Thompson & Miller and James Schiada for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—Kenneth LaFortune and Lillian Ebie owned adjoining Chicken Delight food service franchises in Whittier and La Mirada. When

Ebie delivered Chicken Delight chicken to homes in LaFortune's franchise territory, LaFortune brought this action against Ebie for intentional interference with an advantageous business relationship, and obtained judgment for $25,000 ($17,885 loss of profits, $7,115 punitive damages). Ebie appeals.

The franchise contracts entered into by Chicken Delight, Inc. with LaFortune and Ebie provide that the franchisee shall have "exclusive right and franchise to use" the Chicken Delight system of operation within a particular territory, and that the business of a franchisee shall "be conducted and operated only at a location within" its franchise territory approved by the franchisor. Two alternative constructions of the basic contracts are possible: (1) the franchisee has the exclusive right to operate a place of business within the franchise territory; (2) the franchisee has the exclusive right to conduct all Chicken Delight business within the territory and may prevent neighboring franchise holders from making deliveries inside his territory. The trial court adopted this latter view and construed the franchise contract to mean that a Chicken Delight franchisee could not deliver chicken to customers located in another franchisee's territory; the judgment for damages was based wholly on this construction of the franchise contract.

█ In our view the franchise contracts, as construed by the trial court, violate the antitrust laws in that they are contracts in restraint of trade. Chicken Delight, Inc. sells to its franchisees the supplies of their business. █ Under the Sherman Antitrust Act, "it is unreasonable without more for a manufacturer to seek to restrict and confine areas or persons with whom an article may be traded after the manufacturer has parted with dominion over it." (*United States* v. *Arnold, Schwinn & Co.* (1967) 388 U.S. 365, 379 [18 L.Ed.2d 1249, 1260, 87 S.Ct. 1856].) "Territorial limitations bear at least a superficial resemblance to horizontal divisions of markets among competitors, which we have held to be tantamount to agreements not to compete, and hence inevitably violative of the Sherman Act, . . ." (Brennan, J., concurring in *White Motor Co.* v. *United States* (1963) 372 U.S. 253, at p. 267 [9 L.Ed.2d 738, at pp. 748-749, 83 S.Ct. 696].)

Business and Professions Code section 16600 renders void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business. . . ." Sections 16720 and 16726 render void any combination "[t]o create or carry out restrictions in trade or commerce" and "[t]o prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity." █ The state

antitrust law (the Cartwright Act) is patterned on federal law (the Sherman Act), both have their roots in the common law, and cases construing the Cartwright Act follow the law as interpreted in the Sherman Act. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481].) ■ A breach of state or federal antitrust law may provide a valid defense in an action for breach of contract. (*Morey* v. *Paladini*, 187 Cal. 727, 733 [203 P. 760].) Since at bench liability was based solely on Ebie's interference with LaFortune's asserted contractual right to territorial exclusivity, the basis for liability does not exist, and the judgment must be reversed.

■ Although the issue of the legality of the franchise contract was not raised by Ebie at trial, the legality of a contract may always be examined— even for the first time on appeal. (*Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141, 147-148 [308 P.2d 713].) As was said in *Morey* v. *Paladini, supra*, 187 Cal. 727, 734: "When the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, on its own motion, instigate an inquiry in relation thereto." ■ Yet when this happens and an issue of illegality has surfaced for the first time on appeal, questions critical to a fair determination of the rights of the litigants may remain unexplored. The United States Supreme Court has not declared that all territorial limitations automatically violate the Sherman Antitrust Act. In *United States* v. *Topco Associates, Inc.* (1972) 405 U.S. 596 [31 L.Ed.2d 515, 92 S.Ct. 1126], the court differentiated between horizontal territorial limitations, which it declared to be automatic antitrust violations, and vertical territorial limitations, whose validity remains subject to a rule of reason. It is, of course, somewhat artificial to characterize a series of agreements among manufacturers and retailers, or among franchisors and franchisees, as either vertical or horizontal, since in almost every case the agreements, considered collectively, contain aspects of both horizontal and vertical agreement, in much the same fashion that a house consists of both beams and uprights. In most instances some evaluation must be made in order to determine whether the structure's dominant element resembles a townhouse more than it does a country bungalow or vice versa. In the present case it is fairly clear that the franchise contracts reflect vertical rather than horizontal combination in that the impetus for the division of territory (if in fact such a division was made) came from above and did not originate in agreement negotiated by or dominated by competitors. Consequently, the restraint of trade is susceptible to justification under the rule of reason. It is possible that relevant factual distinctions between the food service industry and the bicycle industry in *Schwinn* may justify exclusivity of territory for delivery of product. For example, speed of delivery, quality of product, and condition of product at time of

delivery may be factors which under the rule of reason could justify restraints of trade that would be unreasonable in the marketing of a standardized manufactured appliance. (Cf. *Tripoli Company* v. *Wella Corporation* (3d Cir. 1970) 425 F.2d 932, 936-937.) These issues cannot be resolved on appeal, and opportunity to present and develop them can only be provided in a new trial. (See *White Motor Co.* v. *United States,* 372 U.S. 253, 261-263 [9 L.Ed.2d 738, 745-747, 83 S.Ct. 696]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 855 [94 Cal.Rptr. 785, 484 P.2d 953].)

The judgment is reversed, and the cause is remanded for a new trial. Each party shall bear his own costs.

Herndon, Acting P. J., and Compton, J., concurred.

A petition for a rehearing was denied July 11, 1972, and the judgment was modified to read as printed above.