**ELECTROGLAS, INC., a California corporation and Xynetics, Inc., a corporation, Plaintiffs,**

v.

**DYNATEX CORPORATION, a California corporation and Barrie F. Regan, Defendants.**

**No. C–78–1290 CFP.**

United States District Court, N. D. California.

July 13, 1979.

---

Kurt W. Melchior, Bernardus J. Smit, Thomas G. Wood, Severson, Werson, Berke & Melchior, San Francisco, Cal., for plaintiffs Electroglas, Inc. and Xynetics, Inc.

Conrad F. Gullixson, Lakin & Spears, Palo Alto, Cal., Ralph C. Alldredge, A Professional Law Corporation, San Francisco, Cal., for defendants Dynatex Corp. and Barrie F. Regan.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

POOLE, District Judge.

This is an antitrust controversy which arose out of the sale of a prototype wafer saw and the distributorship of a diamond impregnated dicing blade. Plaintiffs are Electroglas, Inc. (Electroglas) and its wholly owned subsidiary Xynetics, Inc. (Xynetics). Both manufacture and distribute semiconductor equipment. Defendant Dynatex Corp. (Dynatex) is engaged in the same business. Defendant Barrie F. Regan (Regan) is the controlling shareholder of Dynatex. In December 1973 defendants developed a diamond impregnated dicing blade which was manufactured by a secret method. Defendants also had at that time a partially developed wafer saw (a cutting instrument used in dicing semiconductor wafers).

In early 1974 the parties began negotiations whereby plaintiffs would acquire a distributorship of the dicing blade and would purchase the prototype wafer saw. On March 19, 1974 two agreements were simultaneously executed reflecting these negotiations. The distributorship agreement provided that plaintiffs would be the exclusive dealers in the dicing blade. The sale agreement provided that Electroglas would purchase the wafer saw from Regan for $2.1 million. Electroglas paid one hundred thousand dollars at the time of the signing and executed a $2 million note which Xynetics guaranteed.

In May of 1978 defendants terminated the distributorship. Plaintiffs soon thereafter filed this lawsuit for treble damages claiming that the two agreements constituted an illegal tying arrangement in violation of the Sherman and Clayton Acts. Dynatex filed a counterclaim for $153,925.36 which it claims is due under the terms of the distributorship agreement for goods supplied to Electroglas by Dynatex. Regan also filed a counterclaim for $750,000, the total amount due on the promissory note executed in connection with the sale agreement.

In response to these counterclaims, plaintiffs filed what the court shall term "counterclaims in reply," seeking damages for breach of the duty of contractual good faith and fair dealing and unjust enrichment. Plaintiffs also seek equitable reformation of the agreements to reflect what they claim was the true understanding of the parties. They contend that though the written agreements purport to allocate the entire consideration ($2.1 million) to the sale of the wafer saw, the parties understood that that consideration supported both the sale of the wafer saw and the distributorship of the dicing blade.

Regan has moved for summary judgment on his counterclaim for the balance due

under the promissory note for the sale agreement. He also seeks summary judgment in his favor on the plaintiffs' "counterclaims in reply."

## REGAN'S COUNTERCLAIM

There is no dispute of material facts regarding the execution of the promissory note or as to the unpaid balance due thereon. Plaintiffs invoke affirmative defenses which they argue leave material facts in issue.

■ Plaintiffs first argue that the contract violates federal and state antitrust laws and thus is unenforceable. Federal cases hold that the purchaser cannot avoid paying for goods received under a contract by claiming an antitrust defense. *Kelly v. Kosuga,* 358 U.S. 516, 520–21, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1959); *Tire Sales Corp. v. Cities Service Oil Co.,* 410 F.Supp. 1222, 1232 (N.D.Ill.1976). In *Kelly,* the Supreme Court stated,

> "Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' *Continental Wall Paper Co. v. Louis Voight & Sons Co.,* [212 U.S. 227, 271, 29 S.Ct. 280, 53 L.Ed. 486] (dissenting opinion)."

Continuing, the Court concluded,

> "[w]here, as here, a lawful sale for a fair consideration constitutes an intelligible economic transaction in itself, we do not think it inappropriate or violative of the intent of the parties to give it effect even though it furnishes the occasion for a restrictive agreement of the sort here in question."

*Id.* at 520–21, 79 S.Ct. at 432. *See Mullins v. Kaiser Steel Corp.,* 466 F.Supp. 911 (D.D.C.1979).

■ California courts have not specifically addressed the issue of whether violations of the state antitrust laws (the Cart-

wright Act, Bus. & Prof.Code § 16700 et seq.) provide a valid defense in an action for breach of contract where the consideration has been received and retained by the party raising the defense. Plaintiffs argue that § 16722 of the Business and Professions Code evidences a "stronger" intent to make contracts in restraint of trade illegal and unenforceable than does the Sherman Act. That section provides:

> § 16722. Contracts violating chapter. Any contract or agreement in violation of this chapter is absolutely void and is not enforceable at law or in equity.

But, Section 1 of the Sherman Act provides in pertinent part:

> "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: . . ."

A comparison of these statutes must be made in light of California's clear policy of looking to federal law to interpret the Cartwright Act. In *Chicago Title Ins. Co. v. Great Western Financial Corp.,* 69 Cal.2d 305, 315, 70 Cal.Rptr. 849, 444 P.2d 481 (1968) (en banc), the California Supreme Court said that the Cartwright Act is "similar in spirit and substance" to the Sherman and Clayton Acts and that it follows federal policy. In *LaFortune v. Ebie,* 26 Cal. App.3d 72, 74–75, 102 Cal.Rptr. 588, 589 (2d Dist. 1972), the court stated,

> " * * * The state antitrust law (the Cartwright Act) is patterned on federal law (the Sherman Act), both have their roots in the common law, and cases construing the Cartwright Act follow the law as interpreted in the Sherman Act."

*See Corwin v. Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 852–53, 94 Cal.Rptr. 785, 484 P.2d 953 (1971) (en banc). The commentators also agree with these general propositions. *See* 1 Witkin, *Summary of California Law,* § 450 (8th ed. 1973); Von Kalinowski & Hanson, *The California Antitrust Laws: A Comparison with the Federal Antitrust Laws,* 6 U.C.L.A.L. Rev. 533, 535, 558 (1959). In light of the tracking by the California courts of federal

antitrust laws, from which neither the parties nor the court finds substantial deviation, the court rules that § 16722 must be construed consistently with federal law.

The cases urged by plaintiffs as showing that under California antitrust law there may be a valid defense in an action for breach of contract are not on point. None involves breach of contract for goods sold and delivered to the party who refused to pay. In *Morey v. Paladini,* 187 Cal. 727, 203 P. 760 (1922), the court refused to enforce an exclusive dealership contract which was held to be a restraint of trade. Under that contract the complaining party had been required to purchase a certain amount of goods from defendant. In holding that the contract violated the antitrust laws and for that reason relieved the plaintiff of his obligation to purchase goods, the court in no way affected defendant's right to collect for goods already delivered. Similarly, *La-Fortune v. Ebie, supra,* did not involve the question whether the plaintiff had to pay for goods received. *Ebie* was a suit by one franchisee against another for interference with advantageous business relations when the defendant franchisee sold products in plaintiff's territory. The court held that the covenant not to compete in the exclusive franchise contract violated the antitrust laws. *Accord, Swenson v. File,* 3 Cal.3d 389, 90 Cal.Rptr. 580, 475 P.2d 852 (1970) (covenant not to compete violated antitrust laws and unenforceable).

■ In this case, the contract to sell the rights to the wafer saw which defendant was developing was not in itself a contract in restraint of trade. It was negotiated in conjunction with the blade distributorship, but there is no evidence that the consideration paid for the wafer saw was not a fair amount at the time the deal was consummated. Plaintiffs received what they bargained for. Nothing in the authorities presented by plaintiffs indicates that the California courts would allow plaintiffs to avoid paying for the goods they received. Until California expresses a philosophy at variance with federal law as expressed in *Kelly v. Kosuga, supra,* principles of uni-

formity control this issue. Therefore, the court finds that neither federal nor state antitrust laws provide a defense to Regan's breach of contract claim.

■ Plaintiffs next argue that because their antitrust claim should be an offset to the contract claim, summary judgment on the contract claim is inappropriate at this time. The antitrust claim is not before the court on this summary judgment motion. An offset may ultimately diminish, but does not defeat, Regan's recovery and hence does not preclude resolution of the contract claim at this stage of the litigation. As indicated in *Tire Sales Corp. v. Cities Service Oil Co., supra* at 1232, the court may enter summary judgment on such a contract claim, but may also stay enforcement of the final judgment under F.R.C.P. 54(b) until the antitrust claims are resolved. *See also Emerson Radio & Phonograph Corp. v. Hendrix,* 20 F.R.D. 572 (S.D.N.Y.1957); 6 *Moore's Federal Practice,* ¶ 56.17[15] (2d ed. 1948). This procedure is applicable here.

## PLAINTIFF'S COUNTERCLAIMS IN REPLY

■ In response to defendants' contract counterclaims, plaintiffs themselves filed several "counterclaims in reply." The court notes that although "counterclaims in reply" are not expressly authorized by the Federal Rules of Civil Procedure, the weight of authority allows plaintiffs to file such pleadings if the counterclaims are compulsory. *See* 5 Wright & Miller, *Federal Practice & Procedure,* § 1188; *Southeastern Industrial Tire Co. v. Duraprene Corp.,* 70 F.R.D. 585 (E.D.Pa.1976). For reasons of clarity and practicality, it would be better to treat a "counterclaim in reply" as an amendment to the complaint. Since, however, plaintiffs' "counterclaims in reply" arise out of the same transaction which is the subject matter of defendants' counterclaims, they are compulsory under Rule 13(a) and will be permitted to stand as pled.

Plaintiffs' "counterclaims in reply" seek damages for the alleged illegal tying arrangement, for breach of the duty of good faith and fair dealing and for unjust enrich-

**1172**

ment. In addition, they seek equitable reformation of the contract. Plaintiffs allege that during the contract negotiations, both parties knew that the price of $2.1 million was really to be applied to both the distributorship and the sale agreements. But, the agreements were intentionally structured so that the writings reflected no price allocation. This was alleged to have been done to further a tax advantage.

The first counterclaim in reply reasserts the antitrust claims. Summary judgment is clearly inappropriate on this motion since no factual support for either party has been submitted to the court. The remaining counterclaims are viable only if the court goes beyond the face of the contract. Under the circumstances of this case, the court finds it unwarranted.

▆ Whether a writing is, on its face, a complete expression of the agreement of the parties is a question of law for the court. If the writing contains language that imports a complete legal obligation, it is conclusively presumed that it contains every material item and term, and other terms or conditions cannot be shown. *Heffner v. Gross*, 179 Cal. 738, 178 P. 860 (1919). The language of the agreements and the procedure of using two separate documents is a clear indication that the parties deliberately drafted the agreements to attribute the entire consideration to the sale of the saw. The written documents express an intent different from that which plaintiffs now argue the parties intended. This difference is not a mistake; it was a knowing choice by the parties. *See* affidavit of Mark Hayutin at pp. 81–85. California Civil Code § 3399 sets out the rules for reformation of a contract. It provides:

> "When through fraud or mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of the party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

If there ever was an intention of the parties other than what they expressed in the written documents, that intention was deliberately left out. In *Bartelme v. Merced Irrigation District*, 31 F.2d 10 (9th Cir. 1929), the court refused to reform a written real property contract to insert a contemporaneous oral understanding. The court stated,

> "Power to reform instruments for fraud or mistake is universally conceded to courts of equity, but a court of equity has no power to reform a contract, so as to insert in it a provision which the contracting parties never intended it to contain. It can go no farther than to make the contract express the true intention of the parties as to its provisions. In other words, it can make the contract only what the parties intended it to be."

*Id.* at 12–13.

▆ The deposition testimony establishes that there was no mistake and no fraud involved. Plaintiffs agreed, and even encouraged, the lack of reference to any other agreements in the written instruments. Under these circumstances reformation by equity is inappropriate and the parties will stand bound by the face of their documents. This being the case, plaintiffs' claims for unjust enrichment and breach of duty of good faith must also fail.

Accordingly, IT IS HEREBY ORDERED that defendant Regan's motion for summary judgment on his counterclaim for $750,-000.00 is granted, and judgment shall be entered under Rule 54(b).

IT IS FURTHER ORDERED that judgment on the counterclaim is stayed until judgment is entered on the other aspects of this case.

IT IS FURTHER ORDERED that defendant Regan's motion for summary judgment on plaintiffs' "counterclaims in reply" is granted as to the second, third and fourth claims, but is denied as to the first claim.