**COMMUNITY STATE BANK ROYAL CENTER, Indiana, Appellant (Plaintiff),**

v.

**John O'NEILL, et al., Appellee (Defendant).**

No. 09A02–8907–CV–370.

Court of Appeals of Indiana, Second District.

April 25, 1990.

James H. Austen, Walker Starr Austen & Tribbett, Logansport, for appellant.

Courtney B. Justice, Logansport, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Plaintiff-counter defendant-appellant Community State Bank of Royal Center (Bank) appeals a judgment in favor of defendant-counter plaintiff-appellee John O'Neill (O'Neill), claiming the trial court erred when it determined the statute of limitations had not run on O'Neill's breach of contract claim, that the trial court improperly awarded O'Neill prejudgment interest, and that the trial court erred when it struck the Bank's counterclaim in reply to O'Neill's counterclaim.

We affirm.

### FACTS

The facts most favorable to the trial court's judgment reveal that in May of 1978, the Bank appointed O'Neill as its attorney and as a director. O'Neill handled the Bank's litigation and was paid a small annual retainer, and was paid separately for the litigation he handled. This practice was followed throughout O'Neill's tenure as the Bank's attorney.

In September of 1979, the Bank was named as a defendant in a suit by Paul Streets (Streets) which sought damages amounting to $2 million for an alleged violation of an escrow agreement. O'Neill appeared in this litigation on the Bank's behalf. The litigation continued for five and one half years and was resolved in the Bank's favor when the suit was dismissed with prejudice in February, 1985. During the litigation, O'Neill had attended six court sessions, four days of depositions, and filed five pleadings. O'Neill's time spent on the Streets litigation totalled approximately 288 hours. O'Neill submitted a bill for $45,000 to the Bank in February, 1986.

On April 16, 1986, O'Neill resigned his position as a director and as the Bank's attorney. On December 26, 1986, the Bank filed suit against O'Neill to recover loans made to him secured by real estate mortgages. The Bank moved for summary judgment and default judgment against O'Neill because he failed to answer the complaint. The trial court initially granted both motions, but reversed its default judgment and allowed O'Neill to answer the Bank's complaint.

O'Neill's answer, filed on May 1, 1987, included four counterclaims against the Bank, including claims for the Streets litigation fees, director fees, general counsel fees, and for failure to pay stock dividends. The Bank replied to O'Neill's counterclaim, asserted six affirmative defenses, and included a separate counterclaim against O'Neill for legal malpractice in connection with O'Neill's representation of the Bank in the handling of an estate unrelated to the other matters at issue. O'Neill moved to strike the Bank's "counterclaim in reply" and the trial court withheld ruling on O'Neill's objection until after the trial.

O'Neill paid the notes and satisfied the mortgages the Bank sought to foreclose, so the Bank's original claim against O'Neill was not further litigated. Also, the Bank paid the disputed stock dividend and that issue did not go to trial. A bench trial was held on December 16, 1988, and the trial court issued its judgment on March 2, 1989.

The trial court awarded O'Neill $25,235 for his services in the Streets litigation, as well as prejudgment interest. The trial court also awarded O'Neill $1,200 in directors fees and sustained O'Neill's objection to the Bank's counterclaim in reply (alleged malpractice in an unrelated estate matter).

## ISSUES

1. Whether the trial court erred when it concluded O'Neill's claim for attorneys fees was not barred by the statute of limitations?

2. Whether the trial court erred when it awarded O'Neill prejudgment interest?

3. Whether the trial court erred when it sustained O'Neill's objection to the Bank's counterclaim in reply?

## DECISION

ISSUE ONE—Was O'Neill's claim for attorneys fees barred by the statute of limitations?

PARTIES' CONTENTIONS—The Bank asserts that the applicable statute of limitations, Ind.Code 34-1-2-1.5 (1988), requires that a suit on an oral employment contract be brought within two years of the date of the act or omission which is the subject of the suit, and, because O'Neill's counterclaim was not filed until two years after the conclusion of the Streets litigation, his claim was not timely filed. O'Neill responds that his contract with the Bank was not breached until the Bank refused to pay him for the Streets litigation, which did not occur until after he had submitted his first bill to the Bank, a year after the conclusion of the Streets litigation.

CONCLUSION—O'Neill's claim was not barred.

The trial court did not err when it determined O'Neill's claim was not barred by the statute of limitations. IC 34-1-2-1.5 provides:

"All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, dis-

charge, discipline, promotion, demotion, retirement, wages, or salary) shall be brought *within two (2) years of the date of the act or omission complained of.*" (Emphasis supplied.)

It is the Bank's position that because a claim for attorneys fees accrues when a judgment is rendered in the action for which the attorney was employed, the limitation period should have begun to run from February of 1985, when the Streets litigation was dismissed. A plain reading of the statute, however, militates otherwise.

The statute requires that an action "be brought within two (2) years of the date *of the act or omission complained of.*" *Id.* (emphasis supplied). The act of which O'Neill complains is the Bank's failure to pay him for the Streets litigation. Logically, this failure could not have occurred until after O'Neill submitted a bill for payment. O'Neill was not due payment until he made his demand upon the Bank, and until the Bank refused payment, no breach of O'Neill's oral contract occurred. O'Neill did not submit a bill to the Bank until February 26, 1986 and brought his claim for fees in May of 1987, less than two years after submitting his bill.

While the Bank objects to O'Neill being given unfettered discretion to trigger the running of the limitation period by delaying presentation of a bill, no authority is cited in support of this position.

■ The law does imply that a contract will be performed within a reasonable time if the time for performance is not specified in the contract, *Brown v. Brown* (1885), 103 Ind. 23, 2 N.E. 233; *Jay Clutter Custom Digging v. English* (1979), 181 Ind. App. 603, 393 N.E.2d 230. The record reflects that due to the complexity and protracted nature of the Streets litigation, O'Neill was not able to close the file until June of 1985, although he did not send a bill until February of 1986. *Record* at 360, 405.

We cannot conclude under these circumstances a delay of one year in rendering a bill for legal services is unreasonable as a matter of law, and therefore the statute of limitations began to run from February of 1986 and the two year period had not expired when he filed his claim for fees in May of 1987.

ISSUE TWO—Was the award of prejudgment interest proper?

PARTIES' CONTENTIONS—The Bank contends that because the court had to exercise its judgment to determine the amount of the damages O'Neill received, prejudgment interest was improper. O'Neill replies that an award of attorneys fees is similar to other damage awards in other cases for which this court concluded prejudgment interest was proper.

CONCLUSION—The trial court properly awarded prejudgment interest.

■ Prejudgment interest is proper when the damages awarded are ascertainable in accordance with the fixed rules of evidence and known standards of value. *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349; *New York, Chicago & St. Louis Ry. Co. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468; *Fort Wayne Nat'l Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308, *trans. denied.*

■ The Bank asserts that because it contested the value of O'Neill's services, the amount it owed O'Neill was not ascertainable in accordance with fixed rules of evidence and known standards of value. However, as this court observed in *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, "[t]he test is not whether the parties have mutually fixed the amount in dispute; rather, the question is whether the principal amount is ascertainable by mere computation." *Id.* at 580, quoting *Southern School Buildings, Inc. v. Loew Elec., Inc.* (1980), Ind. App., 407 N.E.2d 240, 250, *trans. denied.*

Just as the plaintiff in *Courtesy* presented evidence of the means by which it arrived at its valuation of the damages it claimed, O'Neill presented evidence of his total hours spent on the Streets litigation, and his claim for damages was merely that figure multiplied by the hourly rate used. That the trial court did not agree with the

hourly rate O'Neill claimed does not alter the fact that the damages were ascertainable by computation.

■ The trial court's determination of the attorneys fees was guided by fixed rules of evidence and known standards of value. Ind.Rules of Procedure, Rule of Professional Conduct 1.5(a) provides:

> "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent."

This rule provides a trial court with useful guidelines for determining an appropriate award of attorneys fees. *Matter of Guardianship of Posey* (1988), Ind.App., 532 N.E.2d 9; *Midland–Guardian Co. v. United Consumers Club* (1986), Ind.App., 499 N.E.2d 792; *Smith v. Kendall* (1985), Ind.App., 477 N.E.2d 953; *U.S. Aircraft Fin., Inc. v. Jankovich* (1980), Ind.App., 407 N.E.2d 287, *trans. denied.* The record reveals that O'Neill explicitly relied upon R.P.C. 1.5(a) and presented evidence on each factor. *Record* at 405–11.

■ Because the damages awarded to O'Neill were ascertainable by computation in accordance with fixed rules of evidence and known standards of value, the trial court properly ordered O'Neill prejudgment interest on the damage award. The Bank asks us to limit the award of prejudgment interest to February, 1986, when O'Neill first submitted a bill for his services, rather than June, 1985, as the trial court ordered.

In *Indiana Tele. Corp. v. Indiana Bell Tele. Co.* (1976), 171 Ind.App. 616, 358 N.E.2d 218, we said: "prejudgment interest computed from the time the principal amount was *demanded or due* is allowable at the permissible statutory rate...." *Id.* at 634, 358 N.E.2d at 229 (emphasis supplied). *See also Indianapolis Mach. Co. v. Cohen* (1978), 177 Ind.App. 208, 378 N.E.2d 931. So O'Neill's payment was not due until it was demanded. Prejudgment interest should have begun to run from February 26, 1986 as the Bank contends.

ISSUE THREE—Did the trial court err when it struck the Bank's "counterclaim in reply?"

In the interest of clarity we review the posture of the pleadings as the trial court found them when it struck the Bank's counterclaim in reply:

> Plaintiff-counter defendant *Bank* filed complaint for recovery of personal notes secured by mortgages; filed counterclaim for malpractice against O'Neill in unrelated estate litigation and six affirmative defenses to O'Neill's counterclaim, i.e., filed counterclaim to a counterclaim in addition to affirmative defenses.
>
> Defendant-counter plaintiff *O'Neill* filed counterclaims for director and counsel fees and failure to pay stock dividends; filed motion to strike "counterclaim in reply."

PARTIES' CONTENTIONS—The Bank claims that a literal reading of the trial rules allows a counterclaim to a counterclaim, and asks us to follow the interpretation of the federal rule. O'Neill responds that the trial rules do not contemplate a counterclaim to a counterclaim and asserts that the Bank should have included its claim in its original complaint or that it should have amended its complaint.

CONCLUSION—The trial court did not err.

■ This is a new question of Indiana law. Fortunately we may take shelter in federal cases which have developed a persuasive solution as to whether a counterclaim may be filed to a counterclaim. The three trial rules involved in the federal and Indiana rules are Ind.Rules of Procedure, Trial Rule 7(A), Trial Rule 13(A) and (B), Trial Rule 15(A) and the Fed.Rules of Civil Procedure, Rule 7(a), Rule 13(a) and (b) and Rule 15(a), all of which are so closely identical as to be one and the same for this purpose.

The Bank's argument begins with a reading of Trial Rule 7(A) (1989 Wests), which provides in pertinent part:

"The pleadings shall consist of:

(1) a complaint and an answer;

(2) *a reply to a denominated counterclaim;*

(3) an answer to a cross-claim;

(4) a third-party complaint ...

(5) a third-party answer.

No other pleadings shall be allowed...."

(Emphasis supplied.)

The Bank then cites Trial Rule 13(A) and (B) (1989 Wests) which provide, in pertinent part:

"(A) Compulsory Counterclaims. A *pleading* shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence of the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

(B) Permissive Counterclaim. A *pleading* may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim."

(Emphasis supplied.)

The Bank argues that because a *reply* to a counterclaim is denominated as a pleading, and because a counterclaim may be stated in any *pleading,* a counterclaim may be stated in a reply to a counterclaim.

The federal courts have considered this argument in connection with the federal rules of procedure. The principle the federal courts have adopted is that, although a counterclaim in reply is not expressly authorized by the rules, it may be used when the counterclaim asserted is compulsory, but not when the counterclaim is permissive. *Frank Briscoe Co., Inc. v. Clark County* (9th Cir.1988), 857 F.2d 606; *Davis & Cox v. Summa Corp.* (9th Cir.1985), 751 F.2d 1507; *Electroglas, Inc. v. Dynatex Corp.* (N.D.Cal.1979), 473 F.Supp. 1167; *Southeastern Ind. Tire Co. v. Duraprene Corp.* (E.D.Pa.1976), 70 F.R.D. 585.

The rationale behind the rule is that counterclaims in reply are more properly considered amendments to complaints. Allowing unrestricted counterclaims in reply would circumvent the rules limiting the amendment of claims and open the door to never ending rounds of pleadings, an unending bouncing ball. *Electroglas, supra; Southeastern Ind., supra;* 5 *Wright & Miller Federal Practice and Procedure: Civil* 1188 (1969).

■ The reason for allowing compulsory counterclaims in reply is because, in fairness, parties should have an opportunity to assert their compulsory counterclaims or they will be barred from pursuing them later by res judicata. *Southeastern Ind., supra.* Such an interpretation is not inconsistent with Trial Rule 15(A) which limits the right of a party to amend its pleadings. A party has the unrestricted right to amend a pleading at any time before responsive pleading is served, or within thirty days if no responsive pleading is permitted. Thereafter, the party may only amend a pleading "by leave of court or written consent of the adverse party ..." T.R. 15(A). A court's decision on whether to permit an amendment is within its broad discretion, and will only be reviewed for an abuse of that discretion. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985; *Brenneman Mechanical & Elec., Inc. v. First Nat'l Bank* (1986), Ind.App., 495 N.E.2d 233, *trans. denied.*

Allowing parties to circumvent this rule by asserting *permissive* counterclaims in

reply would undermine the court's authority to control the scope of the litigation before it. *Southeastern Ind., supra; Wright & Miller, supra.* See *B & D Corp. v. Anderson, Clayton & Co.* (1979), 180 Ind.App. 115, 387 N.E.2d 476, *trans. denied* (trial court did not abuse its discretion when it denied motion to amend complaint when granting of motion would have confounded already complex litigation with new claim).

■ We agree with the federal position on counterclaims in reply. Now we only need examine the Bank's counterclaim to see if it is compulsory or permissive. A compulsory counterclaim is one which arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim. T.R. 13(A). O'Neill's claims against the Bank concern the Streets litigation, the payment of directors and general counsels fees and the payment of a stock dividend. The Bank's counterclaim in reply related to O'Neill's performance and his representation of the Bank in the handling of an estate. The counterclaim in reply certainly does not arise from the same transaction or occurrence as O'Neill's claims, and cannot be considered a compulsory counterclaim.

■ As the Bank's permissive counterclaim in reply is more properly considered an amendment to its original complaint, we will review the trial court's decision only for an abuse of discretion. *Brenneman Mechanical, supra.* Because the Bank made no argument that the trial court abused its discretion, instead asserting only that it had the unrestricted right to file a counterclaim in reply, the Bank has failed to demonstrate the trial court erred when it struck the counterclaim in reply.

Judgment affirmed and this case is remanded with instructions to amend the judgment to show the prejudgment interest began to accrue on February 26, 1986.

HOFFMAN, P.J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part, dissenting in part.

I concur in parts I and III of the majority opinion but dissent as to Part II.

Somewhat parenthetically with respect to my concurrence in Part I, it could be argued that the attorney/client relationship does not fall within the intended scope of I.C. 34-1-2-1.5 dealing with employment contracts. The parties, however, seem to concede the application of the statute to this relationship. In this respect I fully concur in the Court's interpretation of the statute. Nevertheless, the claim might be considered as in the nature of a suit on account. *See Building Systems, Inc. v. Rochester Metal Products, Inc.* (1976) 3d Dist., 168 Ind.App. 12, 340 N.E.2d 791. O'Neill's claim was well within the six year statute of limitations applicable to actions on account. I.C. 34-1-2-1 (West's Ann. Code.1983).

I dissent from the Court's decision in part II. The opinion seems to unduly expand the principle of damages "ascertainable in accordance with the fixed rules of evidence and known standards of value." Majority opinion, p. 177. Here, the fees are not ascertainable by mere calculation because the number of hours spent and the rate applied are subject to the reasonableness test. That the trial court did not consider the hourly rate claimed by O'Neill to be reasonable or applicable here, demonstrates that the damages could not be established by mere mathematical computation.

Furthermore, as acknowledged by the majority opinion, the Rules of Professional Conduct, Rule 1.5(a) sets forth eight variable factors which may affect the reasonableness of a fee. The very subjective nature of these variables compels my conclusion that the allowable fee is not a mere matter of mathematical computation. Accordingly, I would disallow prejudgment interest upon the litigation fees.

I would affirm the judgment with respect to the fees awarded O'Neill and the rejection of the bank's claim but would reverse

the award of prejudgment interest to O'Neill.