**MISSISSIPPI VALLEY GAS COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 25171.

United States Court of Appeals
Fifth Circuit.

July 16, 1968.

John M. Kuykendall, Jr., Jackson, Miss., Peyton G. Bowman, III, Richard M. Merriman, Washington, D. C., Harry A. Poth, Jr., New York City, for petitioner.

Richard A. Solomon, Gen. Counsel, Peter H. Schiff, Solicitor, F. P. C., Washington, D. C., Bennett E. Smith, Asst. Atty. Gen., Jackson, Miss., Bernard A. Foster, Jr., Washington, D. C., Anthony J. Davey, New York City, Martin N. Erck, Dillard W. Baker, Houston, Tex., for respondent.

Before TUTTLE and DYER, Circuit Judges, and MEHRTENS, District Judge.

DYER, Circuit Judge:

Urging that the Federal Power Commission's action in this case was arbitrary and capricious and constituted an abuse of discretion, Mississippi Valley Gas Company (Mississippi), a distributor of natural gas, by its petition for review [1] challenges the issuance of a certificate of public convenience and necessity [2] enabling Humble Gas Transmission Company (Humble), an interstate pipeline company supplying Mississippi, to sell gas directly to Diamond National Corporation (Diamond), a manufacturer located in Mississippi's area of service. We affirm.

Mississippi is exempt from FPC regulations under section 1(c) of the National Gas Act, 15 U.S.C.A. § 717(c), [3] but its rates, services and facilities are regulated by the Mississippi Public Service Commission. Humble is a "natural gas company" under section 1(b) of the Act, 15 U.S.C.A. 717(b), [4] and is subject to the FPC's jurisdiction.

---

1. Filed under § 19(b) of the Natural Gas Act, 15 U.S.C.A. §§ 717 et seq., 717r(b).

2. Required by and issued pursuant to the provisions of §§ 7(c) and 7(e) of the Act; 15 U.S.C.A. §§ 717f(c) (e).

3. See Mississippi Valley Gas Co., 1956, 16 FPC 297.

4. See Humble Gas Transmission Co., 1963, 29 F.P.C. 162.

Diamond, in contemplation of locating a plant in the south, held meetings with Mississippi and various officials and civic leaders of Natchez, which ultimately led Diamond to locate in that area.

Under paragraph 10 of the Humble tariff,[5] Mississippi and other customers had to obtain Humble's approval for any industrial sale over 100 Mcf per month. Consequently, coincident with Mississippi's negotiations with Diamond to supply its gas requirements of well over the amount limited by paragraph 10 of Humble's tariff, Mississippi requested Humble's consent to make such a sale. Humble declined to give permission, claiming that it would not be economically feasible under the rate schedule in its tariff to sell the gas to Mississippi for resale to Diamond. Mississippi nevertheless continued negotiations with Diamond without informing Diamond of Humble's refusal. Subsequently, Humble began direct negotiations with Diamond but did not apprise Diamond that it had refused to sell to Mississippi. Both Humble and Mississippi submitted proposed contracts to Diamond. Ultimately Diamond accepted the Humble proposal because Diamond considered it more attractive both as to terms and firm price.

Humble filed its section 7 application [6] with the FPC for a certificate of public convenience and necessity authorizing it to construct facilities needed to supply gas to Diamond. Mississippi, Diamond and the Public Service Commission of Mississippi intervened. Mississippi also filed a formal complaint alleging that paragraph 10 of Humble's tariff [7] was unjust, unreasonable and unduly discriminatory or preferential under sections 4 and 5 of the Natural Gas Act, 15 U.S.C.A. §§ 717c, 717d. The FPC consolidated Humble's application and Mississippi's complaint. Both the hearing examiner and the FPC approved

Humble's request to serve Diamond, but the FPC, unlike the examiner (who had held that paragraph 10 of the Humble tariff was not invalid but was "required and necessary to Humble in its present supply situation"), determined that the provision was unreasonable because it "does not give Humble the protection the provision is supposed to provide, yet it has the potential to thwart the public interest." Thereafter a new volumetric limitation, approved by the FPC, was substituted for paragraph 10.

Mississippi begins its attack by asserting that there is no substantial evidence to support the FPC's exception, based upon unusual circumstances, to its long standing policy of favoring industrial sales by local distributors. Mississippi paints the policy in such cases with too broad a brush. The policy of the FPC in determining whether to authorize a pipeline sale to an industrial customer is accurately stated in this case as follows:

It is the announced policy of this Commission, where an analysis of all relevant considerations does not militate in favor of one of the competing applicants, that service to an industrial customer be made by the local distributor rather than its pipeline supplier. Panhandle Eastern Pipe Line Company, Opinion No. 510, December 22, 1966. *This policy, however, rather than avoiding an ad hoc approach to each comparative proceeding, requires that each case be decided upon its merits.* (Emphasis added.)

In Southern Natural Gas Company, 1961, 25 FPC 925, relied upon by Mississippi, the FPC pointed out that it was *not* holding "that the distributor in all cases, rather than the interstate pipeline, should be permitted to make proposed industrial sales. We shall continue to consider each case on the merits as it arises

5. Paragraph 10 stated: "Buyer shall not sell gas purchased under Sellers Rate Schedule G-1 to any one industrial customer in excess of 100,000 cubic feet [100 Mcf] per month except by written consent of seller."

6. Section 7(c) of the Natural Gas Act, 15 U.S.C.A. § 717f(c).

7. See note 5 supra.

and make the determinations which are commensurate with the facts and law applicable thereto." Id. at 927. And recently the FPC iterated its policy to permit a local distributor to make sales to industrial customers within its area of service but with the caveat that the policy "is conditional—it does not apply if economic considerations preclude it." Panhandle Eastern Pipe Line Company, 1966, 36 FPC 1107, affirmed sub nom. Panhandle Eastern Pipeline Co. v. FPC, 3 Cir. 1967, 386 F.2d 607.

■ Upon the evidence before it the FPC concluded that in the particular circumstances of this case the public interest would be better served by Humble. We find that this conclusion is based upon substantial evidence. Department of Conservation v. FPC, 5 Cir., 1945, 148 F.2d 746, 750, cert. denied, 326 U.S. 717, 66 S.Ct. 22, 90 L.Ed. 424. The usual benefit of industrial sales to local distributors is in their interruptible nature, so that when gas is needed for firm domestic or commercial customers the gas flow of the industrial customer can be interrupted. Diamond, however, required firm gas which could not be interrupted. Furthermore, the FPC found that economic detriment to Humble would be substantial. Humble has three sources for the gas which it sells to Mississippi and other jurisdictional customers at 17.69 cents per Mcf. Most of the gas comes from the Monroe Field which has been in production since 1916 and is now so fully developed that its production cannot be increased. Therefore, the additional gas needed to supply Mississippi's proposed Diamond contract would have to come from other sources, i. e., the Vixen Field. The FPC found, and the record shows, that under either incremental or rolled-in cost computation, the price of the gas necessary to supply Diamond's demands would be more than the rate Humble could charge Mississippi. Thus Humble would lose money on every Mcf supplied Mississippi. The FPC felt, with justification, that this situation might lead to a rate increase request by Humble to the detriment of Mississippi's customers and other gas consumers.

■ Mississippi next complains that the action of the FPC in permitting Humble to serve Diamond "while at the same time finding the means unlawful by which Humble prevented its local distributor from supplying the customer [paragraph 10 of Humble's tariff] was an abuse of the Commission's discretion and authority" under the Act. Put another way, Mississippi claims that Humble "used" paragraph 10 as a "device" to prevent the sale by Mississippi so that it could sell directly to Diamond. There is simply no support for this in the record. There is no dispute that Humble was entitled to some limiting provision in its tariff to protect it from excessive demands. Fully recognizing this, the FPC directed a revision of paragraph 10 to provide for "suitable volumetric limitations" because, as the paragraph was written, it had the "potential" to thwart the public interest. But there was no evidence upon which the FPC could find that it had, in fact, been so used. On the contrary, it is undisputed that both Mississippi and Humble submitted their proposals to Diamond. Although Diamond knew that Mississippi needed authorization to make the sale, it did not discover, until more than two months after it had contracted with Humble, that permission had been denied to Mississippi. Diamond had sound economic reasons not related to the tariff for accepting Humble's contract and paragraph 10 had no relation whatever to the buyer's selection of his supplier.

■ Mississippi, asserting that the FPC, in determining the public convenience and necessity of certificate proposals, must consider fundamental national antitrust laws, McLean Trucking Co. v. United States, 1944, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; City of Pittsburgh v. Federal Power Commission, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741, points to the recent case of United States v. Arnold, Schwinn & Co., 1967, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249, in which the contractual limitation by a sup-

plier of a distributor's right to resell bicycles was held to be a *per se* violation of section 1 of the Sherman Act. While not asking this Court to decide that Humble has violated the antitrust laws, Mississippi does suggest that Humble's conduct is so wrongful that it should not enjoy the fruits of its misconduct. We do not agree.

The FPC did not find the restriction in paragraph 10 itself unreasonable, but only the manner in which it expressed volumetric limitations. Nor did the FPC find that the tariff was used to hinder competition between Humble and Mississippi. That finding is well supported by record evidence to the effect that the tariff was not based on predatory motives, but on a valid desire by Humble to protect itself *and* its customers from unreasonably large demands by one customer which could require such a large percentage of the gas carried by Humble's pipeline that other customers would suffer.[8] We have no doubt that the absence of such a tariff provision could hinder rather than benefit competition. We view such a provision as probably no restraint on competition and, in any event, not an unreasonable restraint. It is clear that the FPC in reaching its decision gave no weight to the existence of the contract between Humble and Diamond but found, and we are convinced properly so, that the direct sale by Humble was in the public interest. To have awarded the sale to Mississippi solely because of the existence of paragraph 10, which really played no role in either the contract or the FPC's determination of public convenience and necessity, would have been an abuse of discretion negating the public interest considerations that must be the foundation for the FPC's decision making processes in section 7 certificate cases. Atlantic Refining Co. v. Public Service Commission of New York, 1959, 360 U.S. 378, 391, 79 S.Ct. 1246, 3 L.Ed. 2d 1312.

Finally, Mississippi complains that the FPC relied upon incremental cost evidence in deciding to award a certificate to Humble and argues that this was error and could have a detrimental effect on the future of the natural gas industry generally. Mississippi simply ignores the FPC's finding that "We do not need to decide whether incremental costing is appropriate since we are satisfied that consideration of costs both on an incremental and rolled-in basis requires the same conclusion. * * *" The record fully supports this finding.

The order of the FPC is

Affirmed.

---

8. See United States v. Arnold, Schwinn & Co., supra, 388 U.S. at 375, 87 S.Ct. 1856.