**ROYAL CROWN BOTTLING CO., a Colorado corporation, Plaintiff,**

v.

**ROYAL CROWN COLA CO., a corporation, Defendant.**

**Civ. A. No. C–4288.**

United States District Court,
D. Colorado.

Sept. 22, 1972.

Charles F. Brega, Hindry & Meyer, Denver, Colo., for plaintiff.

Donald C. McKinlay, Holme Roberts & Owen, Denver, Colo., James H. Wallace, Jr., Thomas B. Carr, Kirkland, Ellis & Rowe, Washington, D. C., for defendant; Nolan Murrah, Jr., Columbus, Ga., of counsel.

## OPINION AND ORDER

FINESILVER, District Judge.

The Court has considered the pleadings, citations of authorities of counsel, testimony elicited at the hearing held on September 8, 1972 on Plaintiff's Motion for Preliminary Injunction, exhibits, and deposition of Mr. John M. Alden, principal officer of Plaintiff, and the Court has pursued independent legal research.

The Court being advised in the premises finds that the Motion for Preliminary Injunction is not well taken and is DENIED.

## BACKGROUND OF THE CASE

On September 1, 1972, Royal Crown Bottling Co. (Plaintiff-Licensee) filed its complaint and motions seeking a Temporary Restraining Order, a Preliminary and Permanent Injunction requiring Royal Crown Cola Co. (Defendant-Licensor) to supply Plaintiff "with all of the filled cans of defendant's brand of soft drinks . . . . the plaintiff requires" and seeking damages "in an amount not to exceed $1,000,000.00 plus interest and attorney's fees."

Plaintiff bases its claims for relief on alleged violations of the anti-trust laws of the United States and on an alleged breach of contract; the action arises under Title 15, U.S.C. secs. 1, 2, 15, 26 and 45; the amount in controversy exceeds the sum of $10,000.00 exclusive of interest and costs and the Court has jurisdiction over the parties and subject matter by virtue of diversity of citizenship be-

tween the parties and because the case arises under the statutes of the United States.

Plaintiff, a Colorado corporation since 1968, is in the business of canning, bottling and distributing soft drinks pursuant to franchise agreements with defendant, a Georgia corporation.

The franchise agreements with defendant contained restrictions prohibiting plaintiff from selling soft drinks produced under the agreements outside or "without" the licensed territory (ten Colorado counties, including Denver) and from selling the soft drinks to any person who will sell them outside the described territory.

Defendant is engaged in the business of selling concentrates or syrups for the manufacturing and mixing of bottled and canned soft drinks under one or more of its trademarks, i. e. "Royal Crown", "Diet Rite", "Nehi", and is also in the business of selling such canned soft drinks to distributors or franchisees located throughout the United States. Defendant also is engaged in the business of bottling soft drinks in several company-owned plants located elsewhere in the United States.

Plaintiff contends that in August 1972, defendant, arbitrarily and without prior notice to plaintiff, set quota limits on the number of cans of soft drinks that plaintiff could purchase through the defendant and its agent, Seven-Up Bottling Co.[1]

The setting of the quota gave rise to this action and claim of plaintiff for immediate relief.

Plaintiff contends that it is suffering immediate and irreparable harm as a result of the acts of the defendant in establishing an arbitrary quota and in enforcing the territorial and customer restrictions in the franchise agreements in that (1) plaintiff is losing sales of the products involved; (2) plaintiff is prevented from filling orders that have been placed with it; (3) plaintiff is prevented from supplying customers with the products involved; (4) plaintiff is losing a competitive advantage in the marketplace; (5) plaintiff is not able to stock shelf space in supermarkets because of a lack of supply of the franchised canned beverages, and it is losing such shelf space in supermarkets; (6) plaintiff had acquired such shelf space at great cost and expense; (7) plaintiff is losing valuable employees with a consequential deterioration of its route sales; (8) plaintiff has been forced to remove vending machines from certain locations because of its inability to keep them filled with franchised beverages; (9) plaintiff has had to keep much of its truck fleet idle; (10) plaintiff is unable to use certain of its office space because of the reduction in its business; (11) plaintiff is in danger of losing a substantial investment in its business.

Plaintiff further contends that unless the defendant and its agents, servants and employees are enjoined from maintaining the arbitrary quotas it has established and from enforcing the territorial and customer restrictions in the franchise agreements, the plaintiff will continue to suffer irreparable and immediate harm and damage; further that plaintiff has no plain, speedy and adequate remedy at law.

Defendant contends that plaintiff is not entitled to the extraordinary relief requested, i. e. preliminary injunction.

## FACTS

1. A major part of the requested soft drink supply will be distributed for sale outside the ten county Colorado restricted area and generally will be used to service California customers of plaintiff.

1. The Seven-Up Bottling Co. Denver, Colorado, is not a party to this litigation. They have the contract with defendant to receive the syrups and drink concentrate from defendant's shipping point in Cali-fornia and to can soft drinks for and on behalf of plaintiff pursuant to license agreements between plaintiff and defendant.

2. In situations where plaintiff does not sell the product directly outside the ten county area, the product is sold by plaintiff to other local inter-twined companies operated by Mr. John M. Alden, president of plaintiff company, and in turn said companies sell outside the ten county area.

3. Plaintiff's current sales and profits in relation to defendant's products are at levels in excess of prior years.

4. Sales by plaintiff of Royal Crown trademarked products (cans only as distinguished from cases of bottles) reflect that each year defendant supplied plaintiff with a substantial increase of canned beverages over previous years.

1968 – 44,049 cases of cans
1969 – 35,151 cases of cans
1970 – 41,711 cases of cans
1971 – 81,479 cases of cans
1972 – 117,000 (first seven months) cases of cans.

5. Mr. Alden, at his deposition, indicated that plaintiff's projected future needs for canned products is as follows:

*Licensee's Estimate of Can Requirements to Supply Exclusive 10 County Licensed Denver Area, "California Customers," and Miscellaneous other Areas.*

Sept. 1972      35,000 to 40,000 cases
Oct. 1972       35,000 to 40,000 cases
Nov. 1972       35,000 to 40,000 cases
Dec. 1972       35,000 to 40,000 cases

*Licensee's Estimate of Can Requirements to Supply Exclusive 10 County Licensed Denver Area plus Miscellaneous other Areas.*

Sept. 1972      8,000 to 10,000 cases
Oct. 1972       8,000 to 10,000 cases
Nov. 1972       8,000 to 10,000 cases
Dec. 1972       8,000 to 10,000 cases

6. Plaintiff has sufficient inventory of defendant's canned beverages and other products to meet its needs, and to fulfill its contract obligations to defendant, within its ten county Denver exclusive license, having received in excess of 6,500 cases of filled cans in August, 1972, and having received 5,700 cases of filled cans during the first weeks of September, 1972, measured against plaintiff's estimate of average monthly sales demand within its area of 6,000 to 8,000 cases.

7. Defendant is agreeable to continue to perform its obligations to supply plaintiff with defendant's product for sale and is agreeable to continue to provide plaintiff with a sufficient supply of its products, canned beverages and others to permit plaintiff to fulfill contracts in the Denver ten county area.

8. Defendant's exclusive license agreement with plaintiff and its policies pursuant thereto are substantially identical with its exclusive licenses and policies with respect to some 300 other licensees of defendant throughout the United States. Plaintiff does not claim discriminatory treatment.

9. Mr. John Norton, a licensee of defendant in the Chico, California area (an exclusive licensee within a restricted California area) testified that Royal Crown canned beverages—not prepared or canned in the Chico, California area —are surfacing in that locality and Chico area distributors are confronted with several sources in which to purchase said product.

10. Mr. Norton testified that he has invested over half a million dollars in acquiring and developing the tradename of defendant in his exclusive licensed area and he would be seriously injured if another licensee or distributor were permitted to ship defendant's trademarked products to Chico, California.

11. Further Mr. Norton testified that if plaintiff were permitted by order of this Court, or otherwise, to ship defendant's trademarked products to Chico, California, plaintiff would unconsciously benefit from Norton's extensive advertising and promotional activities of the Royal Crown tradename in Chico.

12. To grant relief requested by plaintiff, would (a) enable plaintiff to

operate in territories properly licensed to other licensees of defendant without restrictions; (b) plaintiff would at this juncture of the case potentially impair the organization of defendant's entire licensing system; (c) the order would potentially cause a ripple effect extending beyond plaintiff's ten county restricted area and beyond Colorado's borders into other areas thus affecting license privileges of other licensees in their contractual relationships with defendant.

13. Defendant is in a stable financial posture to pay any money judgment entered against it.

14. Plaintiff's damages are calculable and plaintiff has an adequate remedy at law.

15. To grant plaintiff's requested relief at this juncture of the case would have the effect of the Court nullifying and altering the plain terms of the licensing agreement between plaintiff and defendant and implementing a new contractual relationship on terms at variance to the parties written contract.

16. While plaintiff has introduced testimony of impairment to business operations if additional canned beverages are not obtained to serve customers beyond the ten county area, plaintiff has not established economic collapse to his business if the requested relief is not granted.

## LAW

Plaintiff's contention may be summarized to the effect that the Court should decide the basic issues in this case now and hold the licensing contract invalid and thus afford plaintiff effectively all relief it might obtain should plaintiff ultimately prevail on the merits. In brief, plaintiff urges the Court to enjoin the defendant from activity allegedly in violation of the anti-trust laws of the United States. The law applicable to injunctive relief generally and anti-trust in particular, does not support plaintiff's position.

In its request for a preliminary mandatory injunction, plaintiff has the burden to establish its entitlement thereto against a backdrop that this relief is an extraordinary provisional remedy.

### I.

■ Main factors considered in granting or denying preliminary injunctions *pendente lite* are:

1. The probability that plaintiff will ultimately prevail.

2. Whether the injunction is to maintain the *status quo* or to change it.

3. Whether plaintiff's injury is really irreparable or damage will be suffered.

4. The movant has no adequate remedy at law.

5. Degree of hardship to the defendant during the course of the litigation resulting from entry of the order.

6. Movant has established circumstances that movant is deserving of injunctive relief and has shown that the equities are balanced in its favor.

■ The function of a preliminary injunction is to prevent immediate and irreparable injury and damage and to preserve the *status quo* until the case can be considered in its entirety; it is not a means for obtaining a disjointed and piecemeal adjudication of the merits. Meiselman v. Paramount Film Dist. Corp., 180 F.2d 94, 96 (4th Cir. 1950).

■■ In order to properly dispose of the factual and legal issues inherent in this litigation, all facets of the case must be thoroughly examined and extensive relevant material presented and subjected to judicial analysis. Also the question of good faith of the parties is a proper consideration in a determination whether a preliminary injunction should be granted. 7 Moore, Federal Practice, Section 65.18(3), p. 1690 (1970). Federal courts have adhered to the proposition that the district court must consider the relative hardships to both parties in exercising its equitable discretion upon an application for a preliminary injunction. Northwest Industries Inc. v.

B. F. Goodrich Co., 301 F.Supp. 706 (N. D.Ill.1969).

It is not possible to predict at this time which litigant will prevail and such decision must be withheld until such time as issues are joined, discovery completed, and trial held.

It is plaintiff's principal contention that licensing restrictions as here involved are *per se* violations of the anti-trust laws of the United States and constitute vertical and horizontal [2] restraints of trade and commerce.

■ Where questions of vertical and horizontal restraints are issues in an anti-trust case, the legality thereof "should be determined after a trial." White Motor Co. v. United States, 372 U.S. 253, 261, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

The *White* case is strong authority for the proposition that full scale evidentiary hearing is required. See also, Sandura v. FTC, 339 F.2d 847 (6th Cir. 1964); Snap-on Tools Corp. v. FTC, 321 F.2d 825 (7th Cir. 1963).

A key case in this controversy is United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The trial of this case involved several pivotal questions to the instant action. The trial in this noteworthy case lasted seventy days.

## II.

■ Merits of the case need not be decided in considering whether to grant a preliminary injunction. In Dymo Industries Inc. v. Tapeprinters, Inc., 326 F.2d 141 (9th Cir. 1964) the Court noted:

"[O]n application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." (326 F.2d at 143)

This case abounds with close questions of law and disputed facts and trial is necessary to fully analyze the pros and cons of the licensing restrictions against the backdrop of conflicting legal interpretations of legal precedent.

By way of illustration, legal principals to be considered in anti-trust litigation include:

1. Whether provisions of the franchise agreements between defendant and plaintiff are *per se* illegal and violative of the anti-trust laws and whether the agreements constitute vertical and horizontal restraints of trade and commerce.

2. Whether the *per se* test is applicable or whether a "rule of reason" should be applied, by weighing the reasonableness of the challenged restrictions in light of their economic justifications and their actual (not implied or imagined) effect on competition.

3. Do the licensing agreements between plaintiff and defendant have an effect or intend to have an effect to defeat or lessen competition or is there anything included in said relationship that constitutes an unreasonable restraint of trade.

The field of anti-trust litigation as it relates to the legality of exclusive representations and territorial restrictions in licensing is unclear and subject to fine line distinctions. A careful analyzation of principal case precedent and development of facts relating thereto is necessary to bring the instant litigation into focus for resolution.

■ The lack of clarity in the law militates against the relief requested by plaintiff in its request for a preliminary injunction. In this regard, the Court's research reflects the following authorities have potential bearing on the issues of this case [3] and must be considered

2.  Vertical restraints of trade (including vertical territorial and customer restrictions) are those imposed upon distributors by manufacturers; horizontal restraints (and restrictions) are those agreed to among the distributors themselves.

3.  The list is illustrative only and by no means complete.

and analyzed. United States v. Arnold, Schwinn & Co., *supra*;[4] White Motor Co. v. United States, *supra*; United States v. Sealy, Inc., 388 U.S. 359, 87 S. Ct. 1847, 18 L.Ed.2d 1238 (1967); United States v. Topco Associates, Inc., 319 F.Supp. 1031 (N.D.Ill.1970) prob. juris. noted, 402 U.S. 905, 91 S.Ct. 1374, 28 L. Ed.2d 644 (U.S.April 19, 1971) (No. 70–82); The Coca-Cola Bottling Co. v. Coca-Cola Co., 269 F. 796 (D.Del.1920); Sandura Co. v. FTC, *supra*; Snap-on Tools Corp. v. FTC, *supra;* and Albrecht v. Herald Co., 390 U.S. 145, 88 S. Ct. 869, 19 L.Ed.2d 998 (1968). See also Tripoli Co. v. Wella Corp., 425 F.2d 932 (3rd Cir. 1970); United States v. Glaxo Group Ltd., 302 F.Supp. 1 (D.D.C. 1969), probable jur. noted, 405 U.S. 914, 92 S.Ct. 940, 30 L.Ed.2d 784 (1972); Mississippi Valley Gas Co. v. FPC, 398 F.2d 395 (5th Cir. 1968); Carter-Wallace, Inc. v. United States, 449 F.2d 1374 (Ct.Cl.1971); La Fortune v. Ebie, 26 Cal.App.3d 72, 102 Cal.Rptr. 588 (1972) and others.

### III.

The Court is not unmindful of matters pending before the Federal Trade Commission and United States Senate on questions bearing a relationship to the subject matter of this controversy.[5]

On July 15, 1971, the Federal Trade Commission issued a series of complaints against the major soft drink manufacturers, including Royal Crown, alleging that exclusive territorial restrictions governing the operations of their franchised soft drink bottlers are unlawful under Section 5 of the Federal Trade Commission Act.

The FTC complaints allege that the territorial restrictions are unlawful, both under *per se* rules of illegality (i. e., without regard to their competitive effect), and under the "rule of reason," requiring an economic inquiry to deter-

mine whether the restrictions are unreasonable in light of the. peculiarities of the soft drink market.

In their responses to these complaints, the soft drink manufacturers contended, among other things, that the FTC proceedings were deficient in that the parties whose interests were most directly involved—the franchised bottlers—had not been joined as respondents. To allow the bottlers an opportunity to present their views, the FTC hearing examiner accorded them intervenor status. The FTC posture is readying a full exposition· of the complex legal and economic issues raised by the FTC complaints.

Further on July 31, 1972, the FTC staff moved for a summary judgment of illegality on the *per se* theory. This motion is currently pending before the FTC hearing examiner.

Parallel to this action in the United States Senate, five bills are pending that would grant soft drink manufacturers and franchised bottlers an anti-trust exemption for the challenged territorial restrictions. (S.B. 3040; S.B. 3116, S.B. 3133, S.B. 3145, and S.B. 3587).

These bills would amend the Federal Trade Commission Act to provide that nothing in that Act or any of the anti-trust laws shall make certain exclusive territorial arrangements involving food products unlawful. These bills, if enacted, provide anti-trust immunity for restrictive vertical territorial agreements.

### CONCLUSIONS OF LAW

1. Plaintiff has not demonstrated a reasonable probability it will ultimately prevail or that it will ultimately be entitled to the relief requested in its motion for a preliminary injunction.

2. The legal principles inherent and controlling in this litigation are not clear; they are subject to varied inter-

---

4. The majority opinion in the Schwinn case has been the subject of considerable criticism among legal writers and has been a frequent subject of law review articles dealing with anti-trust.

5. In its ruling herein, the Court has not considered the unrelated proceedings. The proceedings, however, point up activity in the field of anti-trust law.

pretations and the Court at this juncture of the case is not prepared to rule on the far-reaching legal questions.

3. There are disputed factual issues and the Court is not bound to decide said issues on motion for preliminary injunction. The legal issue upon which plaintiff bases its cause of action require decisions and interpretations of the law and development of facts prior to complete adjudication of issues at trial.

4. Preliminary mandatory injunctions should be granted in only extraordinary cases and such a case is not here established.

5. The mandatory injunction here requested would not maintain the *status quo* appertaining to the express terms of the licensing agreement, but more so by implementing a new contract would present an imbalance to the *status quo* to plaintiff's benefit and considerable detriment to defendant. The injunction would change the *status quo*.

6. Plaintiff has not demonstrated that it will be irreparably injured if the Court denies the motion for mandatory injunction; further plaintiff has an adequate remedy at law. Injury or damage, if any, is readily calculable or compensable in money.

7. The relief plaintiff seeks would involve an adjudication of many of the factual and legal matters in issue and a preliminary injunction would grant plaintiff substantially the relief requested in its ultimate claim for relief on the merits.

8. Plaintiff's sale and distribution of the questioned product outside the ten county Colorado area, either by direct or indirect means, could infringe on other areas allotted by defendant to other licensees and would interfere with defendant's contractual relationship with said licensees to defendant's detriment and detriment of other licensees not parties to this litigation.

9. The licensing organization of all of defendant's 300 licensees would be substantially affected by a preliminary injunction herein and said licensees who have expended funds to develop their local or regional trade would be adversely affected by this order.

10. Based on the totality of the considerations herein outlined, against the backdrop of applicable law, potential hardships and balancing the relative equities, the Court concludes that plaintiff's Motion for a Preliminary Injunction is not well taken and is expressly denied.

This Order satisfies the requirement of Rule 52, Federal Rules of Civil Procedure.