NATIONAL ASSOCIATION OF PSYCHIATRIC TREATMENT CENTERS; the American Association of Children's Residential Centers; Coalition of Concerned Physicians of San Diego; and Dori Nanry, on behalf of herself and her minor child, Plaintiffs,

v.

Caspar WEINBERGER, Secretary of Defense; William B. Mayer, Assistant Secretary of Defense, Health Affairs; Teresa Hawkes, Director of the Office of the Civilian Health and Medical Program of the Uniformed Services; and the Office of the Civilian Health and Medical Program of the Uniformed Services, Defendants.

Civ. A. No. 86 F 1024.

United States District Court, D. Colorado.

June 30, 1986.

See also 658 F.Supp. 48.

Mark F. Leonard, Brownstein, Hyatt, Farber & Madden, Denver, Colo., Patric Hooper, Marta Fernandez, Weissburg and Aronson, Inc., Los Angeles, Cal., for plaintiffs Nat. Ass'n of Psychiatric Treatment Centers for Children, The American Ass'n of Children's Residential Centers, and Dori Nanry.

Agim M. Demirali, Demirali & Associates, P.C., Denver, Colo., Alvin G. Kalmanson, Jennings Enstrand Henrikson, San Diego, Cal., for plaintiff Coalition of Concerned Physicians of San Diego.

Dahil Gross, Sp. Asst. U.S. Atty., Denver, Colo., Shalom Brilliant, Dept. of Justice, Washington, D.C., Gerald Wesley, Asst. Gen. Counsel, OCHAMPUS, Dept. of Defense, Aurora, Colo., for defendants.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER is before the Court on plaintiffs' Motion for Preliminary Injunction filed on June 6, 1986. The Court, having fully considered the parties' pleadings, including the Response and Reply briefs filed with the Court, the Declarations and Exhibits submitted by the parties, and the oral arguments before the Court on June 24, 1986, is of the opinion that the Motion should be GRANTED, and a Preliminary Injunction should issue.

### I.

Plaintiffs claim that new terms and conditions regarding reimbursement of Residential Treatment Centers (RTC's) for expenses incurred pursuant to the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), for mental health services, are contrary to law and should be enjoined. According to plaintiffs, the new changes were devised and unless enjoined, will be implemented: (1) without compliance with requisite procedural steps under the Administrative Procedure Act, 5 U.S.C. § 553, (2) without compliance with the governing CHAMPUS statutes and regulations, and (3) without regard to factors that their own consul-

tants advised the Office of CHAMPUS (OCHAMPUS) to consider. They assert that a preliminary injunction should issue to maintain the status quo and prevent irreparable harm to plaintiffs. The changes at issue would impose a cap on reimbursement of providers ($248.00 per diem) and provide for reimbursement of services at RTC's on an "all-inclusive" basis. The present terms provide for different methods of reimbursement, depending on whether the services were institutional (reimbursed at a "reasonable" rate) or for individual professional's services (reimbursed at the lower of the charged rate or 80% of the prevailing charge rate). The proposed changes are scheduled to become effective on July 1, 1986 for new CHAMPUS patients, and August 31, 1986 for existing patients. *See* Exhibit M to Plaintiffs' Motion for Preliminary Injunction.

Defendants assert that (1) the changes are not subject to APA rulemaking requirements, (2) the changes are consistent with applicable statutes and regulations, (3) the changes were made pursuant to broad statutorily created agency discretion, and are therefore not judicially reviewable, (4) even if the changes are judicially reviewable, they are not arbitrary and capricious, (5) plaintiffs will not suffer irreparable harm as a result of the changes, and (6) defendants and the public interest will be harmed if an injunction issues.

The purpose of CHAMPUS is to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of the uniformed services, and for their dependents. 10 U.S.C. § 1071. CHAMPUS is a health benefit program for the families and the members (active and retired) of all seven uniformed services. CHAMPUS essentially shares in the cost of health care services rendered to CHAMPUS patients in civilian health care facilities when such care is not readily available in military health facilities.

One of the health care benefits available under CHAMPUS is the treatment of mental health disorders. 10 U.S.C. § 1077(a).

Mental health services are rendered by institutional and professional providers. RTC's are institutional providers, which furnish to children and adolescents a total, twenty-four hour, therapeutically planned group living and learning situation where distinct and individualized psychotherapeutic interventions take place. An RTC is organized and professionally staffed to provide long-term residential treatment of mental disorders to children and adolescents who have sufficient intellectual potential to respond through active treatment, for whom out-patient treatment is not appropriate, and for whom a protected and structured environment is medically or psychologically necessary. 32 C.F.R. § 199.10(b)(4)(v) and 199.12(b)(4)(v).

Some RTC's employ professionals, such as psychiatrists and psychologists. Those professionals furnish some of the therapy required by patients. Other RTC's make such services available through outside, non-employed professionals. *See* Brown Declaration in support of Plaintiffs' Motion for Preliminary Injunction. Institutional providers, such as RTC's, have always billed OCHAMPUS for services in the name of an organizational entity, rather than as individuals. To be distinguished from the institutional providers are the individual professional providers of care who bill for their services on a fee-for-service basis. Such professional providers include psychiatrists, such as the members of CCPSD, psychologists, and other licensed health care professionals. 32 C.F.R. § 199.12(c)(1).

CHAMPUS regulations provide standards by which payment for mental health services must be determined depending on whether they are furnished by institutional or professional providers. According to § 199.12(e)(2), OCHAMPUS is currently required to base reimbursement for institutional RTC's services on a "reasonable cost/charge basis". Thus, historically, OCHAMPUS has paid RTC's on the basis of their reasonable charges for such services. Pursuant to § 199.12(e)(3), OCHAMPUS has traditionally reimbursed individual health care professionals the lower of the bill charges for those services or the 80th

percentile of a prevailing charge level. In situations in which RTC's do not employ all of the professionals rendering services to CHAMPUS patients, historically, separate charges have been submitted to and paid by OCHAMPUS for the institutional RTC services and the professional services provided to CHAMPUS RTC patients. *See* Brown Declaration at ¶ 9.

Notice of a change in this historical system of payment for RTC's appeared in the September 14, 1984 Federal Register, which noted that each RTC would have to enter into a new Participation Agreement by June 1, 1985. The terms of the new Participation Agreement were not specified in the notice. Not until October, 1985 were RTC's notified of the actual terms and conditions of the proposed Participation Agreement, which Agreement was to become effective on January 1, 1986. This effective date was subsequently changed to July 1, 1986 for new admissions of CHAMPUS patients, and August 31, 1986 for existing CHAMPUS patients.

The final version of the new Participation Agreement which is the subject of this action includes the following terms and conditions:

a) A prospectively determined, all-inclusive rate purportedly reflecting each RTC's actual charges during the year ending February 28, 1985, is established to cover *all* components of mental health services rendered to CHAMPUS beneficiaries while they are residing in an RTC, including services rendered by non-employed psychiatrists, psychologists, and other health care professionals.

b) The actual per diem rate allowed in RTC is purportedly determined by the lowest of: (1) the CHAMPUS rate paid to the RTC for the all-inclusive services as of March 1, 1985; (2) the per diem rate accepted by RTC from any other agency or organization (public or private) or individual that is high enough to cover ⅓ of the total patient days joining the 12–month period ending February 28, 1985; or (3) a capped all-inclusive per diem rate of $248.00.

c) Costs of educational services are generally excluded from reimbursement.

*See* Exhibit L, ¶¶ 2.4, 4.1, and 5.1.

## II.

■ There are six major factors to consider when assessing the propriety of a preliminary injunction. They are:

(1) the probability that plaintiffs will ultimately prevail on the merits,

(2) whether the injunction will maintain the status quo or change it,

(3) whether plaintiffs' injury is really irreparable absent an injunction,

(4) whether plaintiffs have an adequate remedy at law,

(5) the degree of hardship to defendant, and

(6) whether the equities are in plaintiffs' favor.

*See Royal Crown Bottling Co. v. Royal Crown Cola Co.*, 358 F.Supp. 290, 294 (D.Colo.1972); *Lundgren v. Clayton*, 619 F.2d 61 (10th Cir.1980).

The factors will be addressed in the order listed above.

### 1. *Probability that the plaintiffs will prevail on the merits.*

■ The merits of this controversy are complex. A final determination on the merits will be a close call; final disposition will require harmonization of many regulations, statutes, and policies and procedures. The merits of the case, and especially difficult or doubtful questions of law and fact, need not be decided when considering whether to grant a preliminary injunction. *Royal Crown Bottling Co. v. Royal Crown Cola Co.*, 358 F.Supp. 290, 295 (D.Colo.1972). For purposes of this Motion, the Court need only facially address the substantive arguments of the parties, to assess the probability that plaintiffs will prevail. While we need not fully assess the merits at this time, and while defendants may indeed ultimately prevail, we believe that plaintiffs have met their burden of establishing a reasonable probability of success on the merits.

Defendants' actions are reviewable to determine whether procedural requirements were met, and are reviewable under the arbitrary and capricious standard. 5 U.S.C. § 706. Plaintiffs claim that procedural requirements were not met in this case. When it made the challenged changes in the RTC Participation Agreement, OCHAMPUS concededly did not comply with APA rulemaking requirements, and the APA requirements may well have been applicable. *See* 5 U.S.C. § 553 et seq. Exceptions to or exemptions from APA requirements must be narrowly construed. *See Vigil v. Andrus,* 667 F.2d 931, 937 (10th Cir.1982). Both a federal statute and CHAMPUS regulations require that changes be promulgated through publication in the Federal Register. 10 U.S.C. § 1079(c); 32 C.F.R. § 199.4(a). While the defendants did publish the fact that changes were impending, they did not publish certain specifics until October 1985—five months after critical dates for determining the new rates, March of 1984 through February of 1985, had passed. Meaningful response by interested parties was thereby precluded. The regulations arguably will have a significant effect (see, ¶ II.3, below), and are therefore likely substantive and not merely interpretive. As such, rulemaking procedures may well have been required. *See, Brown Exp., Inc. v. United States,* 607 F.2d 695 (5th Cir. 1979).

Plaintiffs also allege that the changes to become effective July 1 are inconsistent with CHAMPUS statutes and regulations, and were adopted without proper consideration of the advice of numerous experts. They assert that the changes are therefore arbitrary and capricious.

For example, Defendants evidently did not consult with the Secretary of Health and Human Services and the other "administering secretaries" with regard to the terms and conditions of the Participation Agreement because defendants contend the Participation Agreement does not constitute a regulation but rather is simply a contract. Since the terms and conditions of the Participation Agreement constitute an agency statement of general applicability designed to implement or prescribe law and policy relating to the CHAMPUS program, such terms and conditions may constitute "rules" or regulations within the meaning of 5 U.S.C. § 551(4). In an arguably very similar context, the Courts have required Medicare to reimburse providers consistent with the Medicare statute, Medicare regulations, and practice and policy notwithstanding the fact that reimbursement methods were a matter of negotiation and the subject of an agreement. *See, Saint Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459 (D.C.Cir.1983); *Vista Hill Foundation, Inc. v. Heckler,* 767 F.2d 556 (9th Cir.1985).

Again, the Court need not fully dispose of the merits of this controversy at this time; however, it appears at least facially that OCHAMPUS failed to follow procedural steps which may have been required, and failed to consider issues which may be relevant, or to engage in necessary analysis of the effects of its proposals. While we are mindful of the considerable deference due the Agency, we believe the plaintiffs may ultimately prevail on the merits. The burden is on plaintiffs to show a reasonable probability that they will ultimately prevail. *Automated Marketing Systems, Inc. v. Martin,* 467 F.2d 1181, 1183 (10th Cir.1972). However, where the balance of equities tips decidedly toward movant, as we believe it does in this case, the burden of showing probable success is less. In light of our assessment of the remaining factors, below, the possibility that plaintiffs will prevail counsels that the Motion for Preliminary Injunction should be granted.

2. *Whether the injunction will maintain the status quo.*

The injunction requested in this case will clearly maintain the status quo. This factor therefore weighs in favor of granting the injunction.

3. *Whether plaintiffs' injury would be irreparable.*

Plaintiffs have filed declarations and exhibits which indicate that the injury which

could result if the new rules are implemented is irreparable. For example, Exhibit N to the Motion filed June 6, 1986, states that RTC services will be affected in numerous ways if the changes are allowed to be implemented on July 1, 1986. While the San Marcos RTC, currently treating plaintiff Dori Nanry's child, indicates that it will not terminate the child's treatment at this time, the San Marcos facility's officials have indicated by Declaration that they will not be able to continue to treat CHAMPUS patients if the new participation agreement and its terms become effective. *See* Hardin Declaration in support of Plaintiffs' Motion for Preliminary Injunction at ¶ 21. Additionally, an unrefuted representation was made by plaintiffs' counsel at the hearing on June 24, 1986, that at least one Colorado RTC would be unable to accept new CHAMPUS patients if the changes proposed are allowed to go into effect July 1, 1986. Mr. Colburn, Executive Director of Forest Heights Lodge, an RTC in Evergreen, Colorado, submitted a Declaration to the same effect. *See also* Welch Declaration in support of Plaintiffs' Motion for Preliminary Injunction.

■ To determine whether a possible injury warrants our issuing a preliminary injunction, we may consider the impact of the challenged action not only on the parties, but also on other interested persons. *See Royal Crown Bottling Co. v. Royal Crown Cola Co.*, 358 F.Supp. 290 (D.Colo. 1979). Ms. Nanry, on her own behalf and on behalf of her child, is a "representative" plaintiff; but the potential impact on other children similarly situated must be considered. At issue in this case is treatment of young people whose progress is often painstakingly slow. The number of facilities available for residential treatment is relatively small (*see, e.g.*, Welch and Frank Declarations); and CHAMPUS beneficiaries, as military decisions dictate, are generally transferred often. Acute care centers will not meet the needs of a considerable number of beneficiaries. *See,* Brown Declaration at ¶ 5. Residential treatment may be the only viable option for many disturbed young people. Additionally, physicians' evaluation of proper treatment options for CHAMPUS patients will be altered by concern over the operation of the new rules. *See,* Brown Declaration, especially ¶'s 12–20.

The threatened harm as a result of the new terms of the participation agreement is substantial, broad ranging, and irreparable. Even a brief interruption of CHAMPUS patient care at RTC's will be deleterious to the patients and their families. As such, this factor favors granting plaintiffs' Motion.

### 4. *Whether plaintiffs have an adequate remedy at law.*

The above-mentioned potential effects of the new terms proposed by the Agency cannot be alleviated by an award of monetary damages. The asserted effects are systemic, substantial, and potentially life-changing for many CHAMPUS patients. They are not merely monetary. Therefore, this factor also weighs in favor of granting the Motion.

### 5. *The injury to defendants, and 6. The balance of equities.*

Defendants assert that if the Motion for Preliminary Injunction were granted, and if they ultimately prevail on the merits, they would later have difficulty determining what monies were owing and from whom. They also maintain that even a temporary injunction will disrupt smooth management of the system, and thereby adversely affect the public interest. Pending final disposition of the claims, we believe that this potential injury to defendants is outweighed by potential injury to plaintiffs and other interested persons if the status quo is not maintained. The balance of equities favors plaintiffs.

### III.

■ Overall, the considerations which govern our assessment of the propriety of a Preliminary Injunction favor granting such an injunction in this case. The injunction will therefore be issued; plaintiffs'

Motion for Preliminary Injunction is GRANTED.